[No. B092376. Second Dist., Div. Six. July 25, 1996.]

JAMES A. GARVER et al., Plaintiffs and Appellants, v.
WILLIAM A. BRACE et al., Defendants and Respondents.

COUNSEL

Hill & Sanford, Gary J. Hill and Timothy J. Trager for Plaintiffs and Appellants.

Fell, Marking, Abkin & Montgomery, Frederick W. Montgomery and Craig S. Granet for Defendants and Respondents.

OPINION

**YEGAN, J.**—In June 1989, appellants James and Georgann Garver (buyers) purchased real property and signed a promissory note containing a prepayment fee clause which is payable to respondents William and Marylou Brace (sellers). In November 1993, the buyers prepaid the note, incurring a fee of over $180,000. They seek restitution of the prepayment fee on the grounds, among others, that it violates Civil Code section 2954.9, subdivision (b).[1]

The trial court sustained the sellers' demurrer without leave to amend, finding the buyers' claims were time-barred because the applicable statutes of limitation began to run when the buyers signed the note in 1989. Alternatively, it found that section 2954.9 did not apply to this loan because the property was not owner-occupied residential real property when the note was executed. These rulings were in error. The limitation periods began to run when the sellers demanded payment of the fee. Under the unique facts alleged in the complaint, section 2954.9 applies to this note because, by prior agreement, the property securing the note became an owner-occupied residence shortly after the note was executed. The judgment must, therefore, be reversed. We exercise judicial restraint and do not reach any theories not relied upon by the trial court in sustaining the demurrer.

*Facts*

The buyers financed their purchase of the then unimproved agricultural property by borrowing $550,000 of the $600,000 purchase price from the

---

[1]All statutory references are to the Civil Code unless otherwise stated. Section 2954.9, subdivision (b) provides, in pertinent part: "[T]he principal and accrued interest on any loan secured by a mortgage or deed of trust on owner-occupied residential real property containing only four units or less may be prepaid in whole or in part at any time but only a prepayment made within five years of the date of execution of such mortgage or deed of trust may be subject to a prepayment charge and then solely as herein set forth. An amount not exceeding 20 percent of the original principal amount may be prepaid in any 12-month period without penalty. A prepayment charge may be imposed on any amount prepaid in any 12-month period in excess of 20 percent of the original principal amount of the loan which charge shall not exceed an amount equal to the payment of six months' advance interest on the amount prepaid in excess of 20 percent of the original principal amount."

sellers. The purchase contract required the buyers to construct a home on the property within one year after purchase, an obligation the buyers fulfilled. The promissory note provides that, if the buyers pay the note before its 10th anniversary, they will also pay a "prepayment fee equal to thirty-three percent (33%) of the amount of the prepayment . . . ." It recites that this prepayment fee will ". . . compensate the . . . [sellers] for the federal income taxes the . . . [sellers] will incur as a result of such prepayment." In November 1993, the buyers sold the property. The sellers demanded a payment of $720,987, which included a prepayment fee of $184,000. The buyers paid the fee and filed this action in May 1994.

The buyers' first amended complaint alleges that the sellers inserted the prepayment fee into the final draft of the promissory note at a time when they knew the buyers could not back out of the deal. Thus, the buyers allege that they were forced to sign the note under economic duress. The buyers also claim they are entitled to restitution of the prepayment fee because it violates section 2954.9, subdivision (b). In addition, they seek a declaration that the fee is "invalid" or void because it is unconscionable, illegal, unreasonable, unsupported by consideration, and was obtained through duress. They contend their lawsuit is timely because the causes of action did not accrue until the sellers demanded payment of the fee, about six months before the complaint was filed.

The sellers argue that the buyers knew every fact necessary to their claims, and had suffered actual damage, when they signed the promissory note in June 1989. For example, all of the conduct alleged to constitute "economic duress" occurred in 1989, before the buyers executed the note. In addition, the sellers argue that, even if the buyers' action is timely, their complaint fails to state a cause of action because the prepayment fee clause in the promissory note is valid.

### Statute of Limitations

As a general rule, the statute of limitations "cannot run before plaintiff possesses a true cause of action, by which we mean that events have developed to a point where plaintiff is entitled to a legal remedy, not merely a symbolic judgment such as an award of nominal damages." (*Davies* v. *Krasna* (1975) 14 Cal.3d 502, 513 [121 Cal.Rptr. 705, 535 P.2d 1161, 79 A.L.R.3d 807].) A wrongful act, such as a breach of professional duty or a statutory violation, "causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action . . . ." (*Budd* v. *Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].) Instead, the cause of action does not accrue, and the

statutory period does not commence to run, until the plaintiff sustains actual and appreciable harm. (*ITT Small Business Finance Corp.* v. *Niles* (1994) 9 Cal.4th 245, 250-251 [36 Cal.Rptr.2d 552, 885 P.2d 965].) Any "manifest and palpable" injury will commence the statutory period. (*Adams* v. *Paul* (1995) 11 Cal.4th 583, 589 [46 Cal.Rptr.2d 594, 904 P.2d 1205].) "[N]either uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations [Fn. omitted.]." (*Davies* v. *Krasna, supra,* 14 Cal.3d at p. 514.)

 Here, the only material disagreement between the parties concerns the date on which the buyers first suffered appreciable and actual harm from the prepayment fee clause. The sellers contend, and the trial court ruled, that the buyers suffered damage when they executed the note because they became obligated to pay the fee and because its existence limited their right to prepay the note without incurring a fee. We disagree.

 No reported California case has decided this specific question. Courts have uniformly agreed, however, that other causes of action arising from payments made under a promissory note accrue when demand for payment is made or the payment is due. For example, when a note is payable in installments, the statute of limitations begins to run on the date each installment is due. (*White* v. *Moriarty* (1993) 15 Cal.App.4th 1290, 1299 [19 Cal.Rptr.2d 200], quoting *Conway* v. *Bughouse, Inc.* (1980) 105 Cal.App.3d 194, 200 [164 Cal.Rptr. 585].) Where a note contains an acceleration clause, ". . . the statute does not begin to run on installments not yet due until the creditor, by some affirmative act, manifests his election to declare the entire sum due." (3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 384, p. 413.)

The cause of action to recover usurious interest does not accrue until the debtor actually pays excess interest. (*Baruch Investment Co.* v. *Huntoon* (1967) 257 Cal.App.2d 485, 495 [65 Cal.Rptr. 131].) Since payments on a usurious note are deemed to apply first to principal, the statute of limitations does not begin to run until the debtor has paid the entire principal amount of the debt. (*Shirley* v. *Britt* (1957) 152 Cal.App.2d 666, 669-670 [313 P.2d 875].)

There is no reason to distinguish between a payment made under a prepayment fee clause and one made on an installment note or under an acceleration clause. In each of these cases, the cause of action accrues when the creditor demands payment or the debtor fails to pay by the due date. The same rule applies here. The buyers were not required to pay the prepayment fee until the sellers demanded it. That is the date upon which the buyers suffered appreciable and actual harm and, therefore, the date on

which their cause of action to challenge the validity of the prepayment fee clause accrued.

Nor are we persuaded that merely including the clause in the promissory note curtailed the buyers' rights in the property so significantly that the statute of limitations began to run immediately. The complaint alleges that, when they executed the note, the buyers intended to construct a home on the property and to occupy it as their principal residence. There is no indication that the buyers initially intended to sell the property during the 10-year period in which the prepayment fee clause applied. Thus, the disincentive to resale created by the prepayment fee did not cause any appreciable harm to the buyers until they were unexpectedly forced to sell their home and pay the fee.

A contrary holding would require the filing of a declaratory relief action whenever terms of a contract revealed the slightest hint of disagreement. After signing any contract, parties would have to conjure up every imaginable hypothetical ground for future disagreement and then decide whether to sue immediately or to risk losing their rights if an actual disagreement erupts more than four years later. There is no reason to encourage, much less require, that sort of premature litigation.

The buyers filed their action less than one year after the sellers demanded payment under the prepayment fee clause. Their claims are not, therefore, barred by the applicable statutes of limitation. (Code Civ. Proc., §§ 337, 338, 343.)

*Section 2954.9*

As an alternative basis for its ruling, the trial court ruled that section 2954.9, did not apply because when the note was executed, the property was agricultural land, not "owner-occupied residential real property . . . ." This ruling was also error.

Section 2954.9, subdivision (b) limits prepayment charges on loans secured by "owner-occupied residential real property containing only four units or less . . . ." Nothing in the statute defines the terms "owner-occupied" and "residential." No reported California case appears to have considered whether the statute applies where, as here, the property, by prior agreement between lender and borrower, becomes owner-occupied residential real property after the loan is made and before the prepayment fee is due. Contrary to the sellers' argument, *Williams* v. *Fassler* (1980) 110 Cal.App.3d 7 [167 Cal.Rptr. 545], did not reach this issue. In that case, the appellants

financed their purchase of a ranch with a promissory note from the seller containing a 50 percent prepayment penalty clause. (*Id.* at p. 9.) Neither party argued that section 2954.9 applied and nothing in the opinion suggests that, at the time of the purchase, the buyers were contractually obligated to construct their primary residence on the ranch. (110 Cal.App.3d at p. 13.) True, the *Williams* court notes that the evidence "does not seem to bring this case within the scope" of section 2954.9. (110 Cal.App.3d at p. 13.) It does not, however, purport to decide whether the statute would apply where, as here, both parties to a note expressly agree that the property securing the loan would become the purchasers' primary residence within one year after the transaction. Accordingly, *Williams* is inapplicable.

On several occasions the Legislature has provided that statutes regulating loans secured by residential real estate apply only when at least one "dwelling" or "residential unit" exists on the property at the time the mortgage or deed of trust is executed. (See, e.g., §§ 2924i, subd. (a), 2937, 2949, subd. (b), 2956; Bus. & Prof. Code, §§ 10240.1, 10240.2, 10242.6, subd. (c), 10244.1.) Section 2954.9, by contrast, contains no such limitation. Instead, it applies to loans securing "residential real property," not a dwelling or residence. Nor does the statute expressly require that the property be "owner-occupied" or "contain[] . . . four units or less," when the loan is executed.

Section 2954.9 is a consumer protection statute, intended to protect borrowers in residential mortgage or deed of trust transactions. Accordingly, the statute should be liberally construed to promote that protection, if such a construction does not contradict the plain language of the statute or lead to absurd results. (*Industrial Welfare Com.* v. *Superior Court* (1980) 27 Cal.3d 690, 702 [166 Cal.Rptr. 331, 613 P.2d 579]; see also *Ford Dealers Assn.* v. *Department of Motor Vehicles* (1982) 32 Cal.3d 347, 356 [185 Cal.Rptr. 453, 650 P.2d 328].) We conclude that the statute applies where, by prior agreement between lender and borrower, the property securing the loan becomes an owner-occupied residence after the loan has been executed and before the prepayment fee is paid.

Here, the complaint alleges that the property was unimproved when the buyers executed the note, but that both parties agreed that the buyers would build their principal residence within one year. Both the purchase contract and the deed of trust obligated the buyers to finish construction on a large single family residence within one year after the purchase. By the time the buyers paid the prepayment fee, the property securing the note was owner-occupied real property under any definition of that term. In this unique circumstance, the note was secured by owner-occupied residential real property within the meaning of section 2954.9. Accordingly, the trial court erred in ruling that the buyers failed to allege a violation of section 2954.9.

The buyers also claim the prepayment fee is unenforceable because it violates section 2954.10, was obtained by duress, and is unconscionable.[2] The sellers claim that this section precludes the action altogether. The trial court did not reach this issue. We exercise judicial restraint and allow the trial court to develop the record before we make any pronouncement upon the section 2954.10 issues.

On remand, the trial court shall reconsider the demurrer and rule in a manner not inconsistent with this opinion.

The judgment is reversed. Costs to appellants.

Stone (S. J.), P. J., and Gilbert, J., concurred.

A petition for a rehearing was denied August 22, 1996, and respondents' petition for review by the Supreme Court was denied October 16, 1996.

---

[2]Section 2954.10 provides: "An obligee which accelerates the maturity date of the principal and accrued interest, pursuant to contract, on any loan secured by a mortgage or deed of trust on real property or an estate for years therein, upon the conveyance of any right, title, or interest in that property, may not claim, exact, or collect any charge, fee, or penalty for any prepayment resulting from that acceleration. [¶] The provisions of this section shall not apply to a loan other than a loan secured by residential real property or any interest therein containing four units or less, in which the obligor has expressly waived, in writing, the right to repay in whole or part without penalty, or has expressly agreed, in writing, to the payment of a penalty for prepayment upon acceleration. For any loan executed on or after January 1, 1984, this waiver or agreement shall be separately signed or initialed by the obligor and its enforcement shall be supported by evidence of a course of conduct by the obligee of individual weight to the consideration in that transaction for the waiver or agreement."