UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

AMERICAN INN, L.P., a Virginia
limited partnership,
                    *Plaintiff-Appellant,*

            and

DONALD WOLF; EVELYN WOLF,
                            *Plaintiffs,*                    No. 01-1888

            v.

SUNTRUST BANKS, INCORPORATED, a
financial institution chartered under
Trust Company Laws of Georgia;
SUNTRUST BANK,
                    *Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
James R. Spencer, District Judge.
(CA-01-123-3)

Argued: January 23, 2002

Decided: February 13, 2002

Before WIDENER, WILLIAMS, and MOTZ, Circuit Judges.

---

Reversed and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Timothy M. Murphy, Williamsburg, Virginia, for Appel-
lant. Paul Kevin Campsen, KAUFMAN & CANOLES, P.C., Norfolk,

Virginia, for Appellees. **ON BRIEF:** Kenneth L. Roberts, KEN-NETH L. ROBERTS, P.C., Newport News, Virginia, for Appellant. Stephen E. Noona, KAUFMAN & CANOLES, P.C., Norfolk, Virginia, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

### OPINION

PER CURIAM:

American Inn, L.P., filed a breach of contract claim alleging that SunTrust Bank miscalculated the interest rate on a tax-exempt industrial development revenue note in 1987 and 1993, resulting in monthly overcharges to American Inn for the duration of the note.[1] The district court granted SunTrust's motion to dismiss for failure to state a claim upon which relief can be granted, ruling that the statute of limitations barred American Inn's claim. Because a new cause of action accrued, and a separate limitations period commenced, with each overpayment of interest, American Inn has stated a claim upon which relief can be granted with respect to all installments due during the relevant five-year limitations period. We therefore reverse and remand for further proceedings consistent with this opinion.

### I.

In 1985, the Industrial Development Authority of the City of Petersburg, Virginia (the "IDA"), issued a twenty-year, tax-exempt industrial development revenue note, payable to SunTrust, in the

---

[1]American Inn is the successor-in-interest to Tudor Inn; SunTrust Bank is the successor-in-interest to both United Virginia Bank and Crestar Bank. For ease of reference, the parties will be referred to throughout this opinion by their present names, even when referring to their respective corporate predecessors.

amount of $1,200,000. American Inn immediately assumed payment obligations pursuant to the note, which was used to finance a hotel development project.

The terms of the note required American Inn to pay the principal of the note in "consecutive equal monthly installments," due on the first day of each month. American Inn also was obligated to pay accrued interest on the first day of each month, and, by the terms of the note, interest was calculated at a "Tax Exempt Rate" equal to 80% of the Prime Rate. Any prepayments by American Inn were to be applied "first to the payment of interest accrued to the prepayment date and then to the reduction of principal," although American Inn was to provide "not less than 30 days' notice" of prepayment to SunTrust.

The note also entitled SunTrust to adjust the interest rate pursuant to a yield maintenance provision contained in the note if there was a "decrease in yield," defined as "any change in the tax-equivalent yield to the Bank on this Note" resulting from a "change in law." Thus, SunTrust could assess "supplemental interest in an amount sufficient to compensate the Bank for such 'change in yield.'"

In 1987, Congress reduced the corporate tax rate by 12%, resulting in a decrease in yield to SunTrust on the note. SunTrust therefore exercised its rights under the yield maintenance provision to increase the interest rate on the note. Congress changed the corporate tax rate again in 1993, this time increasing it by 1%. This increase in the corporate tax rate resulted in an increase in yield on the note to SunTrust, but SunTrust made no corresponding decrease in the interest rate on the note.

Also during the term of the note, in 1991, American Inn defaulted on a related loan held by SunTrust, entitling SunTrust to demand full payment of the note. Rather than demand full payment, however, on November 1, 1991, SunTrust entered into a Forbearance Agreement with American Inn. In the Forbearance Agreement, American Inn represented and warranted that, as of the date of the agreement, it had "no claims, actions, causes of action, defenses, counterclaims or set-offs of any kind or nature which [American Inn], individually or collectively, can assert against [SunTrust] in connection with the

making, closing, administration, collection and/or enforcement" of the note. Furthermore, the Forbearance Agreement provided that in the event that American Inn did have any such claims, actions, causes of action, defenses, counterclaims or setoffs — again limited to those existing "ONLY AS OF THE DATE OF THIS AGREEMENT" — it waived and relinquished them. (Emphasis in original.)

American Inn continued to make monthly payments on the note to SunTrust through Spring 1998, when it obtained a payoff calculation from SunTrust in order to sell the property. American Inn objected to SunTrust's payoff calculation, alleging that SunTrust had been miscalculating the supplemental interest. On May 5, 1998, SunTrust agreed to "research its files to determine the applicable interest rate" and permitted American Inn to reserve "its rights, to the extent they exist, to object to the payoff amount[.]" Subject to this reservation, American Inn paid off the note in full and sold the property. On July 1, 1998, however, SunTrust notified American Inn that the bank "d[id] not believe it [wa]s required to refund or adjust any of the interest payments made to date" because "any payments made by [American Inn] without protest or objection at the time they were made was sufficient to waive any right to object to the change in interest rate."

On March 2, 2001, American Inn filed this action against SunTrust for, *inter alia*, breach of contract.[2] Consistent with its objection to SunTrust's payoff calculation, American Inn alleged that SunTrust miscalculated the increased interest rate, beginning in 1987, resulting in overpayment by American Inn of the monthly supplemental interest charges assessed by SunTrust. American Inn further alleged that SunTrust's failure to reduce the interest rate beginning in 1993, when the corporate tax rates increased, resulted in additional overpayment by American Inn of the monthly supplemental interest charges. SunTrust filed a motion to dismiss for failure to state a claim upon which relief can be granted.

---

[2]The district court dismissed American Inn's remaining claims for breach of fiduciary duty, breach of a duty of good faith and fair dealing, negligence, fraud, unjust enrichment, and constructive trust. The district court also dismissed plaintiffs Donald and Evelyn Wolf, American Inn's principals and guarantors of the note, and dismissed defendant SunTrust Banks, Inc., SunTrust's parent corporation. On appeal, American Inn does not challenge the dismissal of these claims or parties.

The district court granted SunTrust's motion to dismiss for failure to state a claim on the ground that the applicable five-year statute of limitations barred all of American Inn's contract claims. The court rejected American Inn's assertion that the statute of limitations began to run at the time of the final payoff of the note and instead held that the "statute of limitations began to run[ ] in 1987 and 1993 when the interest rate was improperly adjusted" because the note was an installment contract. In a footnote, the district court further concluded that American Inn, by entering the Forbearance Agreement, had "contractually waived any right they had to sue [SunTrust] in connection with the [note]." American Inn appeals.

In reviewing a district court's dismissal for failure to state a claim, we must assume the factual allegations contained in the complaint to be true, and we review *de novo* the legal sufficiency of those allegations. *See, e.g.*, *Migdal v. Rowe Price-Fleming Int'l, Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). The longstanding rule in this circuit is "that a motion to dismiss for failure to state a claim should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." *Rogers v. Jefferson-Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir. 1989) (internal quotation marks and citation omitted).

## II.

Under Virginia law, the statute of limitations applicable to a breach of contract action is five years and runs from the date "when the breach of contract occurs." Va. Code Ann. § 8.01-246(2) (Michie 2000); *id.* § 8.01-230. An exception to strict application of the statute of limitations is made in the case of an "indivisible" contract,[3] where a non-breaching party can "elect between pursuing his remedy when an action which would constitute a breach occurs or awaiting the time fixed by the contract for full and final performance. If he elects the

---

[3]An indivisible, or entire, contract is distinguishable from a divisible contract, such as an installment contract, in that it requires "a continuous or recurring course of professional services related to a particular undertaking." *Harris v. K & K Ins. Agency, Inc.*, 453 S.E.2d 284, 286 (Va. 1995).

latter course, the statute of limitations does not begin to run against his right of action until the time for final performance fixed by the contract has passed." *Suffolk City Sch. Bd. v. Conrad Bros., Inc.*, 495 S.E.2d 470, 472-73 (Va. 1998).

According to American Inn, the district court erred in ruling that its contract claim was time-barred because the note constituted an "indivisible" contract, rather than a divisible "installment" contract calling for payment or performance in installments. *See Heirs of Roberts v. Coal Processing Corp.*, 369 S.E.2d 188 (Va. 1988) (noting that an indivisible contract "differs from those providing for payment in installments, due at specified times" for purposes of determining when statute of limitations commences). Therefore, American Inn argues, it was entitled to wait until it paid off the note in 1998 to sue for all overcharges paid pursuant to the note. Because SunTrust billed American Inn for principal payments and interest on a monthly basis, and American Inn paid in monthly installments for the duration of the note, however, the district court correctly characterized the note as an "installment" contract and not an "indivisible" contract. American Inn therefore had no right or option to wait until it paid off the note to object to SunTrust's calculation of interest as to all payments made pursuant to the note.

American Inn alternatively argues that the statute of limitations began to run on the individual payments as each payment became due, and, therefore, it has stated a claim at least with respect to those overpayments on installments due within the five-year limitations period. With this contention, we agree.

After determining that the note constituted an "installment" contract, the district court concluded that "a separate cause of action arose, and the statute of limitations began to run, in 1987 and 1993 when the interest rate was improperly adjusted." Given the court's correct characterization of the note as an installment contract, this conclusion inaccurately captures the relevant law and threatens to produce inequitable results for claims on long-term installment contracts. Indeed, *Garver v. Brace*, 55 Cal. Rptr. 2d 220 (Cal. Ct. App. 1996), on which the district court relied, expressly recognizes that "[c]ourts have uniformly agreed . . . causes of action arising from payments made under a promissory note accrue *when demand for pay-*

*ment is made or the payment is due. . . .* [W]hen a note is payable in installments, the statute of limitations begins to run *on the date each installment is due.*" *Id.* at 223 (emphasis added). The *Garver* court explained that the statute of limitations "does not begin to run on installments not yet due until the creditor, by some affirmative act, manifests his election to declare the entire sum due." *Id.* (internal quotation marks and citations omitted).

*Garver* is correct that courts generally have agreed that for claims based on an installment contract, a cause of action accrues, and the statute of limitations begins to run, when each installment becomes due. *See* 15 Richard A. Lord & Samuel Williston, Williston on Contracts § 45:20 (4th ed. 2000) ("Where a contract is divisible, and, thus, breaches of its severable parts give rise to separate causes of action, the statute of limitations will generally begin to run at the time of each breach."); *Keefe Co. v. Americable Int'l, Inc.*, 755 A.2d 469, 472 (D.C. 2000) (stating that the rule "in most of the nation, for at least a century" is that "where a debt is payable in independent instalments [sic] the right of action accrues upon each as it matures").

Virginia follows this general rule. *See tenBraak v. Waffle Shops, Inc.*, 542 F.2d 919, 924 n.6 (4th Cir. 1976) ("[W]e note that Virginia does follow the majority rule recognizing contracts for installment payments are divisible, thereby permitting separate actions to be maintained to recover installment payments as they fall due." (citation omitted)); *Williams v. Matthews*, 48 S.E. 861 (Va. 1904) (holding that statute of limitations on claim to recover five unpaid installments of stock subscription ran from dates on which unpaid installments were due); *Cromer v. Molden Real Estate Corp.*, 1991 WL 835194 (Va. Cir. Ct. 1991) (holding that statute of limitations commenced when plaintiff made first excess installment payment, not when defendant wrongfully raised interest rate on loan); *LaFratta v. Fid. Bankers Life Ins. Co.*, 1980 WL 143116 (Va. Cir. Ct. 1980) (stating that "the statute of limitations runs against each installment from the time it becomes due, that is, from the time when an action might be brought to recover it"). Thus, the relevant breach triggering the statute of limitations is SunTrust's alleged overcharge on each installment, and the statute of limitations commenced as to each installment as of the date it became due. Accordingly, American Inn stated a cause of action

with respect to any installments that became due within the relevant five-year limitations period.

### III.

SunTrust argues that even if American Inn had a right to sue for overcharges on the note, it has waived this right.

SunTrust first points to the 1991 Forbearance Agreement and contends that the district court was correct in determining that American Inn, by entering the Forbearance Agreement, contractually waived any right to sue SunTrust in connection with the note. In the Forbearance Agreement, American Inn released all claims, actions, causes of action, defenses or setoffs existing "ONLY AS OF THE DATE OF THIS AGREEMENT." (Emphasis in original). Because a cause of action on an installment contract accrues as of the time each payment is due, as discussed above, the only "claims, actions, causes of action, defenses or setoffs" American Inn waived or released in the Forbearance Agreement were those involving overpayments that it had already made as of the date of the Forbearance Agreement. Thus, the Forbearance Agreement only bars American Inn from challenging overpayments on installments that became due prior to the date on which it executed the Forbearance Agreement, November 1, 1991.

SunTrust also at least implicitly contends that American Inn waived its right to sue for overcharges by making repeated monthly payments without objection. Under Virginia law, a course of dealing is sufficient to establish waiver or modification *only* if the "circumstances surrounding the conduct of the parties [is] sufficient to support a finding of a 'mutual intention' that the [waiver or] modification be effective, and such intention must be shown by clear, unequivocal and convincing evidence, direct or implied." *Cardinal Dev. Co. v. Stanley Constr. Co.*, 497 S.E.2d 847, 850-51 (Va. 1998) (internal quotation marks and citations omitted).

At this juncture, we must reject the argument that the course of dealing between the parties established that American Inn waived its right to sue. On review of dismissal for failure to state a claim, a court must credit a party's allegations in its complaint. American Inn alleges that it made monthly payments without knowledge that it was

paying excess supplemental interest because the interest rate calculation formula was complicated, SunTrust provided no notice or explanation of the supplemental interest charges, and the amounts billed by SunTrust differed from month to month. These allegations preclude a finding at this stage of "mutual intention," *id.*, to establish a waiver through course of dealing.

## IV.

The parties raise a number of other issues, which we decline to address at this time. For example, American Inn apparently contends that SunTrust's agreement in May 1998, when American Inn paid off the note, to permit American Inn to "reserve its rights, to the extent they exist, to object to the payoff amount", tolled the limitations period. Thus, American Inn claims that it is entitled to recover for all installments due during the last five years of the note, rather than from the date in 2001 when American Inn filed the current action. American Inn's arguments in support of this contention depend on further fact-finding, and we therefore leave this issue to the district court for resolution without expressing any opinion as to the outcome.

In addition, each party raises issues on appeal that relate to the substance of the claims alleged in the complaint. American Inn argues that, in the event it proves that SunTrust miscalculated the interest rate on the note, any overpayments must be retroactively credited as prepayments of principal and that notice of prepayment was not required for all prepayments.

SunTrust, for its part, contends that no breach occurred for failure to adjust the interest rate in 1993, when the corporate tax rate and SunTrust's corresponding yield on the note increased. SunTrust reasons that it was entitled to adjust the interest rate pursuant to the yield maintenance provision if there was a decrease in yield, but was not required to adjust the interest rate if, instead, there was an increase in yield.

These and other arguments concern the merits of the case, and we therefore leave them to the district court to consider in the first instance.[4]

---

[4]The district court remarked in passing that the note required American Inn to give notice of prepayment; it is unclear whether the court consid-

## V.

We hold that American Inn has stated a breach of contract claim for overcharges of interest with respect to installments due to Sun-Trust during the relevant five-year limitations period. Therefore, the district court's judgment dismissing American Inn's breach of contract claim for failure to state a claim upon which relief can be granted is reversed and remanded for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*

---

ered American Inn's argument as to the limited scope of the note's prepayment notice requirement, or whether it would be inequitable to require prepayment notice if the prepayments were assessed by SunTrust as supplemental interest in violation of the note and American Inn had no knowledge that it was paying amounts in excess of the payments due.