Filed 5/21/25  Nunn v. Student Loan Solutions CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| BRETT HAROLD NUNN et al., <br><br> Cross-Complainants and Appellants, <br><br> v. <br><br> STUDENT LOAN SOLUTIONS, LLC, et al., <br><br> Cross-Defendants and Respondents. | H051678 <br> (Santa Cruz County <br> Super. Ct. No. 22CV02376) |

This case concerns a student loan taken out by Brent Harold Nunn in 2008.  Four payments were made, the last in December 2012.  In 2017, Student Loan Solutions, LLC (SLS) purchased the loan, and in 2022 it sued Nunn and his mother Martinette Angie Luna Nunn, who co-signed the loan, for non-payment.  In response, the Nunns filed cross-claims against SLS and four others for violating state and federal debt collection statutes.  Cross-Defendants in turn filed motions to strike the cross-claims under Code of Civil Procedure section 425.16, the anti-SLAPP statute, which the trial court granted.

The Nunns now appeal.  On appeal, the Nunns do not dispute that their cross-claims arose out of protected conduct and triggered the anti-SLAPP statute.  Instead, the

Nunns argue that they satisfied their burden under the anti-SLAPP statute of showing a probability of prevailing.

Relying on the court's decision in *Guracar v. Student Loan Solutions, LLC* (May 20, 2025, H051407) ___ Cal.App.5th ___ (*Guracar*)), which was argued with this appeal, we conclude that the Nunns have standing to bring their cross-claims. We also conclude that the Nunns have shown a probability of prevailing on their cross-claims for suing to collect a time-barred debt and for making false or misleading representations. However, we conclude that the Nunns have failed not shown a probability of prevailing on their remaining cross-claim that the complaint failed to allege the statute of limitations had not expired.

## I. BACKGROUND

### A. The Loan at Issue and the Nunns' Default

In April 2008, Brent Nunn was enrolled as an art student and took out a private student loan, co-signed by his mother, from Bank of America, N.A. (Bank of America) for $30,000. The loan required the Nunns to make 240 monthly payments of $481.55. An associated credit agreement required Bank of America to send monthly statements showing "the Monthly Payment Amount and the monthly due dates." The agreement also contained an acceleration clause granting the bank the option, if the Nunns failed to make a payment, to accelerate repayment of the loan by providing "notice that the whole outstanding principal balance, accrued interest, and all other amounts payable . . . are due and payable at once."

Because of family financial problems, Brent Nunn dropped out of school in 2011, and while his father made several monthly payments, the last payment on the Nunns' loan was in December 2011. On June 25, 2012, Bank of America charged off $45,063.23, consisting of $43,510.08 in principal and $1,553.15 in interest, on the loan.

2

## B. Bank of America's Efforts to Collect in Full

In declarations, Brent Nunn and his mother averred that, after Bank of America charged off their loan in June 2012, they received letters from the bank, which they were now unable to locate, demanding that the loan " 'be paid in full immediately.' " They also averred that, over the next five years, they received letters from debt collectors seeking payment of $45,0623.23, the amount charged off by the bank.

## C. The Sale to SLS and the 2017 and 2018 Letters

On October 31, 2017, Student Loan Solutions, LLC (SLS) purchased a group of loans from Bank of America, including the loan to the Nunns.

In November 2017, the next month, Williams and Fudge, Inc. (Williams & Fudge) sent Brent Nunn a letter on behalf of SLS. The letter listed $45,063.23 as the amount due and informed Mr. Nunn that Williams & Fudge had been hired to collect the amount owed. The letter also stated that, "[i]f your account(s) is currently in repayment, your payment schedule will remain intact." Finally, the letter stated that "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." Brent Nunn's mother received an identical letter.

On May 31, 2018, Williams & Fudge sent Brent Nunn a second letter on behalf of SLS. The letter once again listed the amount due as $45,063.23. It told Mr. Nunn that Williams & Fudge wanted to continue trying to find a way "to clear this outstanding amount" and proposed 61 monthly payments of $751.05.

## D. The May 2022 Letters

On May 3, 2022, Williams & Fudge sent Brent Nunn a third letter on behalf of SLS. Although this letter contained the same consumer identification and pin numbers as the 2017 and 2018 letters to Mr. Nunn, it listed the amount due as $16,828.80 rather than $45,063.21. The May 2022 letter stated that Mr. Nunn had "failed to pay installments due as required," that "SLS hereby accelerates the loan and demands all payments due,"

and that "$16,828.80 is now immediately due and owing to SLS."  The following week, on May 11, 2022, Williams & Fudge sent Mr. Nunn's mother a similar letter.

### E.  The Proceedings Below

SLS sued the Nunns in Santa Cruz County Superior Court in October 2022.  The complaint alleged that the Nunns took out a loan with Bank of America, that in June 2010 Bank of America charged off $45,063.23 on the loan, and that the last payment on the loan was in December 2011.  The complaint also alleged that Bank of America sold the Nunns' loan to SLS.  Finally, the complaint alleged that, since November 2018, the Nunns became indebted to SLS for $16,828.80, representing the payments missed in the last four years and, because SLS accelerated the loan, the remaining principal.  The complaint attached an affidavit from Christopher Rue, SLS's general manager, which in turn attached copies of the Nunns' credit agreement with Bank of America and a statement disclosing the amount of the loan and the monthly payments.

In December 2022, the Nunns, on behalf of themselves and a class of similarly situated persons, filed cross-claims against SLS, Rue, and Williams & Fudge, as well as Stephen Goldsmith and Goldsmith & Hull, one of the lawyers representing SLS and his firm.  The Nunns alleged that cross-defendants violated four debt collections statutes: Fair Debt Buying Practices Act (Debt Buyers Act) (Civ. Code, § 1788.50 et seq.), and the Private Student Loan Collections Reform Act  (PSLCRA) (Civ. Code, § 1788.200 et seq.), and the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) (Civ. Code, § 1788-1788.337), as well as the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.).  The two Goldsmith cross-defendants demurred and filed a motion to strike under the anti-SLAPP statute.  The trial court sustained the demurrer on the ground that the Nunns failed to allege any injury and therefore lacked standing to assert statutory violations.  Because the trial court sustained the demurrer with leave to amend, it did not reach the anti-SLAPP motion.

4

The Nunns amended their cross-complaint. In the amended cross-complaint, they alleged that they were misled by the complaint into believing that their debt was legally enforceable. As a result, they allegedly attempted to settle the suit and, when those attempts failed, they engaged legal counsel to defend themselves, incurring attorney's fees and costs. The Nunns also alleged that cross-defendants violated the Debt Buyers Act, the PSLCRA, and the Rosenthal Act, and the FDCPA by suing or otherwise seeking to collect a time-barred debt. The Nunns further claimed that cross-defendants violated the Rosenthal Act and the FDCPA by making misleading representations and misrepresenting the character, amount or status of the debt owed. Finally, the Nunns claimed that cross-defendants violated the PSLCRA because the complaint filed against them failed to allege that the statute of limitations had not expired.

Cross-defendants, in one motion by the Goldsmith defendants and another by the remaining cross-defendants, moved to strike under the anti-SLAPP statute. After holding that the debt collection statutes invoked by the Nunns do not preclude application of the anti-SLAPP statute, the trial concluded that the anti-SLAPP statute applies to the Nunns' claims because the claims arise out of protected litigation activity. The court also ruled that the Nunns failed to show a probability of prevailing on their claims. In particular, the trial court concluded that the Nunns had failed show that they were likely to prevail on their claim that cross-defendants sought to collect a time-barred debt because their loan was an installment contract and repayment of it was not accelerated until 2022. The trial court did not address standing or explain why it concluded that the Nunns failed to show a probability of prevailing on the remaining cross-claims.

After the trial court granted the motion to strike, the Nunns filed a timely notice of appeal. (Code Civ. Proc., § 425.16, subd. (i); *id*., § 904.1, subd. (a)(13).)

## II. DISCUSSION

The anti-SLAPP statute was enacted to combat strategic lawsuits against public participation (SLAPPs): " 'lawsuits brought primarily to chill the valid exercise of the

constitutional rights of freedom of speech and petition for the redress of grievances.' "
(*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1242, quoting Code Civ. Proc., § 425.16,
subd. (a).)  The statute authorizes special motions to strike in which the merits of a
party's claims are evaluated, pre-discovery, in " 'a summary-judgment-like procedure.' "
(*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 324; see *id*. at pp. 321-322; but
see Code Civ. Proc., § 425.16, subd. (g) [permitting trial courts to order specified
discovery "for good cause shown"].)  If a claim arises out of an "act . . . in furtherance of
a person's right of petition or free speech . . . in connection with a public issue," the claim
must be stricken unless the non-moving party establishes "a probability that [it] will
prevail on the merits."  (Code Civ. Proc., § 425.16, subd. (b)(1).)  To establish a
probability of prevailing, the non-moving party must demonstrate that the claim is
"legally sufficient and factually substantiated"—that is, the claim has " 'minimal merit' "
and the factual showing supporting it, if accepted, "would be sufficient to sustain a
favorable judgment."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 385, 391, 396.)

The Nunns argue that the trial court erred in striking their cross-claims because
they established a probability of prevailing on each.  We review the trial court's rulings
on this issue de novo.  (See, e.g., *Park v. Board of Trustees of California State University*
(2017) 2 Cal.5th 1057, 1067.)  However, before doing so, we consider an alternative
ground for affirmance urged by cross-defendants: standing.

## A. Standing

Cross-Defendants argue that the Nunns lack standing because they have not
presented evidence that they suffered concrete harm.  Following the *Guracar* decision,
we reject these arguments and conclude that Nunn has standing to seek statutory damages
under the Debt Buyers Act, the PSLCRA, the Rosenthal Act, and the FDCPA even in the
absence of concrete harm. (*Guracar*, *supra*, __ Cal.App.5th at pp. __ [pp. 8-16]; see also
*Chai v. Velocity Investments, LLC* (2025) 108 Cal.App.5th 1030, 1038-1041)

6

We also note that the Nunns have alleged concrete harm. In their amended cross-complaint, the Nunns alleged that, because the complaint misled them into believing that their debt was legally enforceable, they attempted to settle SLS's lawsuit and, when that attempt failed, incurred attorney's fees and costs in defending themselves. Moreover, when cross-defendants moved to strike, the Nunns submitted declarations substantiating these allegations. This evidence is sufficient to establish standing at this stage. As the *Guracar* decision observed, the expense and distress of defending against a wrongfully initiated lawsuit is a traditionally recognized harm that satisfies standing requirements under Article III of the United States Constitution. (*Guracar*, *supra*, __ Cal.App.5th at p. __ [pp. 8-9].) This evidence also satisfies Article III's standing requirements for the Nunns' claims that cross-defendants made false or misleading representations. While federal courts have required reliance causing harm for misrepresentation claims (*ibid*. [Opn., p. 9]), the Nunns presented evidence that, in reliance on misrepresentations in the complaint about the statute of limitations, they engaged in settlement negotiations and incurred attorney's fees. By any standard, these injuries are sufficient to establish standing. (See, e.g., *Bouye v. Bruce* (6th Cir. 2023) 61 F.4th 485, 490.)

## B. Time-Barred Debt

It is clear that the Nunns' cross-claims for suing to collect a time-barred debt are legally sufficient. Both the Debt Buyers Act and the PSLCRA expressly prohibit debt buyers and private student loan collectors from suing to collect debts that are time-barred. (Civ. Code, § 1788.56 ["A debt buyer shall not bring suit . . . to collect a consumer debt if the applicable statute of limitations on the debt buyer's claim has expired."]; *id*., § 1788.204 ["A private education . . . loan collector shall not bring suit . . . to collect a private education loan if the applicable statute of limitations for the . . . private education loan collector's claim has expired."].) In addition, the FDCPA—and, by extension the Rosenthal Act, which incorporates provisions of the FDCPA (Civ. Code, § 1788.17)—has been interpreted to prohibit suing or threatening to sue to collect a time-barred debt.

7

(See, e.g., *McMahon v. LVNV Funding, LLC* (7th Cir. 2014) 744 F.3d 1010, 1020; *McCollough v. Johnson, Rodenburg & Lauinger, LLC* (9th Cir. 2011) 637 F.3d 939, 947-948.)

However, the trial court held that the Nunns did not factually substantiate their cross-claims, and therefore failed to establish a probability of prevailing on their cross-claims for suing to collect based on a time-barred debt because their loan was not accelerated until May 2022 and therefore SLS's suit to collect on the payments owed after that date was timely filed. (See Code Civ. Proc, § 337.) The Nunns argue that they presented evidence sufficient to establish that Bank of America accelerated repayment of their loan shortly after charging it off in June 2010—a dozen years before the complaint and therefore well outside the limitations period. As explained below, we agree with the Nunns.

The Nunns' loan required them to make monthly payments for 20 years. Under the continuous accrual doctrine, when a contractual obligation arises on a recurring basis, as with an installment contract or a lease, " 'a [new] cause of action accrues each time a wrongful act occurs, triggering a new limitations period.' " (*Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1199.) Consequently, under the ordinary operation of their loan, each time the Nunns failed to make a monthly payment, a new claim for breach arose, and a new limitations period on that new claim began to run. (*Piedmont Capital Management, LLC v. McElfish* (2023) 94 Cal.App.5th 961, 970; *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co*. (2004) 116 Cal.App.4th 1375, 1388.)

However, the Nunns' credit agreement contained an acceleration clause. If the Nunns failed to make a monthly payment, this clause gave the holder of the loan the option, after providing notice, to make the whole loan, any accrued interest, and all other amounts "due and payable at once": "[Y]ou"—which the promissory note defined to mean Bank of America or another holder of the loan—"have the right to give me [the

8

Nunns] notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement are due and payable at once (subject to any applicable law which may give me a right to cure my default) if . . . I fail to make any monthly payment to you when due . . . ."

If a party exercises the option granted by an acceleration clause to require immediate full payment, the statute of limitations on all amounts due under the loan begins to run upon failure to make that payment.  (See *Garver v. Brace* (1996) 47 Cal.App.4th 995, 1000 (*Garver*); see 13 Williston on Contracts (4th ed. 2022) § 79:18, pp. 337-340, *id.* (2024 supp.) § 79:18, pp. 1-2.)  However, an acceleration clause requires " 'some affirmative act' " manifesting the election to exercise it.  (*Garver*, *supra*, 47 Cal.App.4th at p. 1000; see also *Jones v. Wilton* (1938) 10 Cal.2d 493, 500 ["If the creditor fails to act affirmatively to mature the indebtedness, the statute of limitations is not set in motion."].)

The Nunns presented evidence of such an affirmative act.  Their declarations and cross-defendants' records showed that between 2008 and 2011 only four monthly payments were made on their loan, and that Bank of America charged off the loan in June 2012.  Afterwards, both the Nunns received at least one letter from Bank of America demanding payment of their loan " 'in full immediately' " and debt collectors demanded payment of $45.063.23, the full balance on the loan when it was charged off.[1]  Although the Nunns could not locate this letter, they submitted later letters from Williams & Fudge seeking to collect the loan.  The first set of these letters were sent separately to Brent Nunn and his mother on November 21, 2017.  Rather than demanding a monthly payment

---

[1] The Nunns also asked the trial court to take judicial notice of a declaration submitted by the plaintiff in the *Guracar* case containing a 2010 letter from Bank of America requesting that his account "be paid in full immediately."  However, the trial court denied the request, and the Nunns have neither appealed from that denial nor filed a request for judicial notice in this court.  Accordingly, we do not consider the Guracar declaration or the letter attached to it.

9

or even the previously missed monthly payments, these letters listed the amount due as $45,063.23, the full balance on the loan. In addition, they stated that "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." In May 2018, Williams & Fudge sent letters to both Mr. Nunn and his mother, again listing the amount due as $45,063.23. These letters informed the Nunns that SLS was seeking "to collect the total amount from you in connection with the above delinquent account(s)."

In light of this evidence, a reasonable trier of fact could find that Bank of America notified the Nunns that it was exercising its option to accelerate their loan. As noted above, if the Nunns failed to make any monthly payment, their credit agreement gave Bank of America the option to accelerate repayment by providing notice that "the whole outstanding principal balance, accrued interest, and all other amounts payable . . . are due and payable at once." Evidence showed that the Nunns failed to make monthly payments from 2008 to 2010 and only four payments in 2011. In 2012, Bank of America charged off the loan as a bad debt, and afterwards it sent the Nunns a letter demanding payment of the loan " 'in full immediately.' " And, in 2017 and then in 2018, Williams & Fudge sent the Nunns letters demanding payment of $45.063.23, the full balance of the loan. Based on the evidence in the record, a reasonable trier of fact could find that sometime after writing off the Nunns' loan in May 2012 but before Williams & Fudge's November 2017 letter, Bank of America exercised its option to accelerate repayment of the loan by notifying the Nunns that the whole outstanding balance of their loan was due and payable at once.

This conclusion is supported by the disclosure included in the November 2017 letters that Williams & Fudge sent to the Nunns on behalf of SLS. These letters stated that "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it." This statement is, word-for-word, the one that the Debt Buyers Act requires debt buyers to include in their initial written communication with a

10

debtor when attempting to collect a time-barred debt. (Civ. Code, § 1788.52, subd. (d)(2) [" 'The law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it.' "].) As these letters demanded the entire balance due on the Nunns' loan, which would have been due only if the loan had accelerated, and as there is no suggestion that that only a portion of this debt was time-barred, it may reasonably be inferred that Williams & Fudge believed that the Nunns' loan had been accelerated more than four years earlier, outside the relevant limitations period.

Courts have found loans accelerated based on similar evidence. For example, in *Sharpe v. Brotzman* (1956) 145 Cal.App.2d 354, the plaintiffs purchased a sawmill financed in large part by a promissory note, which contained an acceleration clause. (*Id.* at pp. 356, 360.) After the plaintiff failed to make payments (*id.* at p. 357), the sellers sent the plaintiff a notice of foreclosure containing the following statement: "I herewith demand of you all the unpaid balance plus taxes plus the percentages allowed me under the mortgage as foreclosure costs." (*Id.* at p. 359, italics omitted.) The Court of Appeal held that this statement was "clearly an exercise of the option . . . to declare all payments due upon a default, and was notice to the purchasers of the exercise of that opinion." (*Id.* at p. 360.) The evidence here is indistinguishable: Bank of America demanded that the Nunns' loan be paid in full immediately, and subsequent collection letters sought payment of the full amount of the loan.

The conclusion that Bank of America accelerated the Nunns' loan is also supported by a case involving SLS and William & Fudge. In *Shadrin v. Student Loan Solutions LLC* (D. Md. 2022) 2022 WL 971183 (*Shadrin*)), as here, SLS bought two student loans from Bank of America and later sued the debtors for nonpayment. (*Id.* at pp. *1-*2.) The debtors in turn sued SLS and Williams & Fudge for violating the FDCPA and related state statutes by seeking to collect a time-barred debt. (*Id.* at pp. *1, *3.) SLS and Williams & Fudge moved to dismiss, but the district court denied the motion. Applying California law, the court held that the loans at issue had been

11

accelerated before SLS purchased them in 2017. (*Id*. at pp. *5-*6.) In 2016, Bank of America sent one of the debtors a letter stating that her account balance was $17,683.79, which was much more than any monthly payment or the previously missed payments, and that this balance was due. (*Ibid*.) The letter did not include any installment schedule or information about making regular installment payments. (*Ibid*.) Accordingly, the district court concluded that the letter constituted "an affirmative act necessary to accelerate an unsecured loan" because it "contained demands for the entire balance of the borrower's loan, coupled with the lack of information about or subsequent notices of installment payments." (*Id*. at p. *7.)

Similarly, here, on behalf of Bank of America Williams & Fudge sent the Nunns collection letters stating that their balance was $45.063.23, the full amount of the loan charged off by the bank, and demanded payment of this amount rather than a $481.55 monthly payment or the monthly payments that were missed. As the Goldsmith cross-defendants point out, the 2018 collection letters express a desire to "continue to find a way to work with you in order to clear this outstanding balance" and propose a monthly payment plan. However, this proposal is not for making monthly payments or repaying missed monthly payments. Instead, it seeks 61 payments of $751.05, totaling $45,811.61, or slightly more than the amount charged off by Bank of America. Thus, as in *Shadrin*, the collection letters sought the entire balance rather than monthly installment payments and therefore by themselves constituted an affirmative act providing notice of acceleration.

Despite their involvement in the *Shadrin* case, SLS and Williams & Fudge do not even mention the case in their briefing. Instead, they contend that in *Beal Bank v. Crystal Properties, Ltd. (In re Crystal Properties, Ltd.)* (9th Cir. 2001) 268 F.3d 743 (*Beal Bank*), the Ninth Circuit held that a letter demanding repayment in full was not a notice of acceleration. While that is technically correct, they fail to mention what else the letter in *Beal Bank* said. In *Beal Bank*, a letter from the Federal Deposit Insurance Corporation

12

(FDIC) informed a debtor that " 'there is a 5% default interest due on all remaining principal and unpaid interest,' " and " '[u]nless we receive payment in full of all principal and accrued interest by May 31, 1995 . . . we will be filing a Notice of Default.' " (*Id.* at p. 752.) However, the FDIC's letter also stated that that " 'we *will* be filing a Notice of Default' " and threatened future action, which, the Ninth Circuit observed, "demonstrates that the acceleration option had *not* been exercised." (*Ibid.*, italics added) Accordingly, the Ninth Circuit concluded that the letter "merely advised the debtors that the FDIC could invoke the default interest clause in the future." (*Ibid.*)

This case is different. The 2017 and 2018 collection letters do not calculate interest using the contractual rather than the default interest rate. Indeed, as they list the amount ($45,063.23) charged off by Bank of America in 2012, they do not seek any interest. Nor do the letters threaten to take any future action. Consequently, in sharp contrast to *Beal*, nothing in the collection letters indicates that Bank of America had not accelerated the Nunns' loan when it demanded payment of the whole principal balance on the Nunns' loan. To the contrary, as the collection letters could not have sought immediate payment of the entire balance of the loan absent acceleration, the collection letters implicitly confirm that the Nunns' loan was accelerated.

Cross-Defendants cite several other cases, but these cases are also distinguishable. *First Bank Investors' Trust v. Tarkio College* (8th Cir. 1997) 129 F.3d 471 (*Tarkio*) is inapposite for the same reason as *Beal Bank*. The letter in *Tarkio* stated that the debtor was in default and requested " 'full payment of the unpaid principal . . . and unpaid and accrued interest.' " (*Tarkio*, *supra*, 129 F.3d at p. 474.) However, the letter also calculated the interest due at the contractual rather than the default interest rate, thereby indicating that the bank was not yet exercising its right to accelerate the loan. (*Id*. at pp. 475-476.) In another case cited by cross-defendants, a bank warned a debtor that it " 'ha[d] the option of accelerating and declaring immediately due and payable all of the liabilities owing the Bank,' " but did not indicate that in fact it was exercising that option.

13

(*In re Zamani* (Bankr. N.D. Cal. 2008) 390 B.R. 680, 689.)  In still other cases, there was not even a warning that the note in question would be accelerated.  (See *Green v. Carlstrom* (1963) 212 Cal.App.2d 240, 243-245; *Bird v. Real Time Resolutions, Inc.* (N.D.Cal. 2016) 183 F.Supp.3d 1058, 1063.)  Consequently, none of the cases cited by cross-defendants suggests that Bank of America did not accelerate the Nunns' loan.

Accordingly, a reasonable trier of fact could find that no later than November 2017 Bank of America gave the Nunns notice it was exercising its option to accelerate repayment of their loan.  In light of such a finding, any claim concerning the Nunns' loan would have accrued shortly thereafter when the Nunns failed to repay the entire loan, which in turns means that the four-year statute of limitations on the holder's claims would have begun to run and expired before SLS sued in 2022.  The Nunns therefore have established a probability of defeating cross-defendants' statute of limitations defense and of prevailing on their cross-claims that cross-defendants violated the the Debt Buyers Act, the PSLCRA, the Rosenthal Act, and the FDCPA by suing to collect a time-barred debt.

## C. The Misrepresentation Claims

The Nunns claim that cross-defendants violated both the FDCPA, and by way of the FDCPA incorporated into it, the Rosenthal Act by making false or misleading representations in trying to collect their debt.  These cross-claims are supported by the same evidence that supports the Nunns' cross-claims that cross-defendants sued to collect a time-barred debt.  The complaint alleged that the claim against the Nunns was timely because the applicable statute of limitations is four years, the Nunns' loan was an installment contract, and the loan was accelerated in May 2022.  However, as shown above, the Nunns presented evidence that their loan was accelerated before it was sold to SLS in 2017.  As this was more than four years before the complaint was filed in 2022, a reasonable trier of fact could find that the statements in the complaint concerning the

14

statute of limitations were either false or deceptive and that these statements mischaracterized the legal status of the claims against the Nunns.

We therefore conclude that the Nunns have established a reasonable probability of prevailing on their cross-claims under the FDCPA and the Rosenthal Act for false and misleading representations.

## D. Pleadings

In addition to claiming that cross-defendants violated the PSLCRA and other collections statutes by suing to collect a time-barred debt, the Nunns claimed that cross-defendants violated the PSLCRA by failing to allege that the statute of limitations had not expired. (Civ. Code, § 1788.205, subd. (a)(a)(1) ["The complaint shall allege . . . (2) [t]hat the applicable statute of limitations has not expired."].) We disagree. Although the complaint did not expressly state that the statute of limitations had not expired, as discussed above, it contained other allegations that taken together, asserted that the debt was not time-barred. Accordingly, we conclude that the trial court correctly struck the Nunns' PSLCRA cross-claim that cross-defendants failed to allege that the statute of limitations had not expired.

## III. DISPOSITION

The judgment is reversed. The matter is remanded to the trial court, which is directed to reinstate (1) all of appellants' cross-claims to the extent that they are based upon suing to collect a time-barred debt and (2) appellants' cross-claims under the Rosenthal Act and the FDCPA for making false or misleading representations. The order striking appellants' cross-claim for violating the PSLCRA by failing to allege that the statute of limitations had not expired is affirmed. Appellants are entitled to recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1), (3).)

15

_____

BROMBERG, J.

WE CONCUR:

_____

LIE, ACTING P. J.

_____

WILSON, J.

*Nunn et al. v. Student Loan Solutions, LLC, et al.*
H051678