Filed 5/20/25

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| OSMAN YUNUS GURACAR,<br><br>    Cross-Complainant and Appellant,<br><br>    v.<br><br>STUDENT LOAN SOLUTIONS, LLC,<br>et al.,<br><br>    Cross-Defendants and<br>    Respondents. | H051407<br>(Santa Clara County<br>Super. Ct. No. 22CV405008) |


This case concerns a student loan that Osman Yunus Guracar took out in 2007 but stopped paying in 2009. In 2017, Student Loan Solutions, LLC (SLS) purchased the loan, and in 2022 it sued Guracar for non-payment. Guracar responded by filing cross-claims against SLS and four others for violating state and federal debt collection statutes. Cross-Defendants in turn filed motions to strike the cross-claims under Code of Civil Procedure section 425.16, the anti-SLAPP statute, which the trial court granted.

Guracar now appeals. On appeal, he does not dispute that his cross-claims arose out of protected conduct and triggered the anti-SLAPP statute. Instead, Guracar argues that he satisfied his burden under the anti-SLAPP statute of showing a probability of prevailing.

Before reaching these arguments, we address standing. We conclude that Guracar has standing to assert his claims under California's Fair Debt Buying Practices Act (Debt

Buyers Act) (Civ. Code, § 1788.50 et seq.), the Private Student Loan Collections Reform Act (PSLCRA) (Civ. Code, § 1788.200 et seq.), and the Rosenthal Fair Debt Collection Practices Act (Rosenthal Act) (Civ. Code, §§ 1788-1788.337) as well as the Fair Debt Collection Practices Act (FDCPA) (15 U.S.C. § 1692 et seq.). In particular, following this court's recent decision in *Chai v. Velocity Investments, LLC* (2025) 108 Cal.App.5th 1030 (*Velocity Investments*), we conclude that the Debt Buyers Act, the PSLCRA, and the Rosenthal Act do not require plaintiffs seeking statutory damages to show concrete harm. We also conclude that the Legislature intended to follow Congress in allowing plaintiffs to seek statutory damages under the FDCPA absent concrete harm.

On the merits, we conclude that Guracar established a probability of prevailing on his cross-claims for (1) suing to collect a time-barred debt, (2) misrepresentations that the claim against Guracar was timely, and (3) failure to comply with certain PSLCRA requirements. However, we conclude that Guracar has not shown a probability of prevailing on his remaining cross-claims.

Accordingly, we reverse the judgment, reinstate Guracar's cross-claims for suing to collect a time-barred debt, his cross-claims under the Rosenthal Act and the FDCPA for making false and misleading representations, and his cross-claim claim under PSLCRA for failing to allege compliance with that statute, but otherwise affirm the striking of Guracar's cross-claims.

## I. BACKGROUND

### A. The Loan at Issue and Guracar's Default

In December 2007, Guracar was a law student at Lincoln Law School in San José, and he took out a private student loan from Bank of America, N.A. (Bank of America) for $7,000. The loan required Guracar to make 240 monthly payments of $77.82. An associated credit agreement required Bank of America to send monthly statements showing "the Monthly Payment Amounts and the monthly due dates." The agreement also contained an acceleration clause granting the bank the option, if Guracar failed to

2

make a payment, to accelerate repayment of his loan by providing notice that "the whole outstanding principal balance, accrued interest, and all other amounts payable . . . are due and payable at once."

Beginning in January 2009, Guracar made payments on his loan, but he stopped in August 2009 because he could no longer afford the payments. In January 2010, Bank of America charged off $8,288.53 in principal, interest, and other amounts on Guracar's loan.

## B. The February 2010 Letter

In February 2010, several weeks after charging off Guracar's loan, Bank of America sent, and Guracar received, a letter. The letter listed the balance on Guracar's account as $8,288.53, the amount charged off by Bank of America. The letter stated that Guracar's account was "seriously delinquent" and that the bank was seeking to "collect the debt owed." In addition, the letter informed Guracar that it was "imperative" that his account be paid "in full immediately." The letter did not request previously missed payments, provide a schedule for future payments, or give any due dates.

## C. The Sale to SLS and the November 2017 Letter

In October 2017, Student Loan Solutions, LLC (SLS) purchased a group of loans from Bank of America, including Guracar's. Three weeks later, in November 2017, Williams and Fudge, Inc. (Williams & Fudge) sent a letter to Guracar on behalf of SLS. The letter listed $8,288.53 as the amount due on the loan. It also informed Guracar that he could dispute the debt within 30 days and request various records. Finally, the letter stated that "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, and we will not report it to any credit reporting agency."

## D. The June 2022 Letter

In June 2022, almost five years after the November 2017 letter, Williams & Fudge sent Guracar a second letter on behalf of SLS. While this letter contained the same

consumer identification and pin numbers as the November 2017 letter, it listed the amount due as $3,963.06 rather than $8,288.53. The June 2022 letter also stated that Guracar had "failed to pay installments due as required," "SLS hereby accelerates the loan and demands all payments due," and "$3,963.06 is now immediately due and owing to SLS."

### E. Proceedings Below

In September 2022, SLS sued Guracar in Santa Clara County Superior Court. The complaint alleged that Guracar took out a loan with Bank of America, but stopped making payments in 2009, and in January 2010 Bank of America charged off $8,288.53 in principal and interest. The complaint also alleged that Bank of America sold Guracar's loan to SLS. Finally, the complaint alleged that Guracar owed SLS $3,963.06, representing the payments missed in the last four years and, because SLS had accelerated the loan, the remaining principal payments. The complaint attached an affidavit from Christopher Rue, SLS's general manager, which in turn attached copies of Guracar's credit agreement with Bank of America and a statement disclosing the amount of the loan and the monthly payments.

In November 2022 Guracar, on behalf of himself and a class of similarly situated persons, filed cross-claims against SLS, Rue, and Williams & Fudge, as well as Stephen Goldsmith and Goldsmith & Hull, one of the lawyers representing SLS and his firm. Guracar alleged that the cross-defendants violated the FDCPA, the Rosenthal Act, the Debt Buyers Act, and the PSLCRA by suing to collect a time-barred debt. Guracar also claimed that cross-defendants violated the FDCPA and the Rosenthal Act by misrepresenting the character, amount or status of the debt owed and making misleading representations. Finally, Guracar claimed that cross-defendants violated the Debt Buyers Act by not including statutorily required disclosures in SLS's initial written communications and the PSLCRA by not including statutorily required allegations and documents in the complaint.

4

Cross-Defendants moved to strike Guracar's cross-claims under the anti-SLAPP statute, arguing that the cross-claims arose from protected conduct and that Guracar could not show a probability of prevailing. The trial court granted the motion and entered judgment in the cross-defendants' favor on Guracar's cross-claims.

In ruling that the cross-claims arose out of protected conduct and triggered the anti-SLAPP statute, the trial court noted that Guracar did not dispute that his cross-claims arose out of statements made in anticipation of litigation, filing the complaint, and statements in the complaint. The court also rejected Guracar's argument that debt collections statutes underlying his cross-claims precluded application of the anti-SLAPP statute.

In ruling that Guracar failed to establish a probability of prevailing, the trial court held that Guracar's loan was an "installment debt" and therefore claims based on installments due between September 2018 and September 2022 were timely under the applicable four-year statute of limitations. The court also ruled that SLS accelerated Guracar's loan in June 2022, making the balance of the loan due then. The trial court did not discuss Guracar's argument that the February 2010 letter already had accelerated repayment.

With respect to Guracar's other cross-claims, the trial court held that SLS made the initial disclosures required by the Debt Buyers Practices in its November 2017 letter, which cross-defendants submitted along with their replies. Additionally, in light of its ruling that SLS's claims were not time-barred, the trial court ruled that cross-defendants made no false or misleading statements. Finally, the trial court ruled that the allegations in the complaint and documents attached to it substantially complied with the PSLCRA's requirements.

Guracar filed a timely notice of appeal. (Code Civ. Proc., § 425.16, subd. (i); *id.*, § 904.1, subd. (a)(13).)

## II. DISCUSSION

The anti-SLAPP statute was enacted to combat strategic lawsuits against public participation (SLAPPs): " 'lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances.' " (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1242, quoting Code Civ. Proc., § 425.16, subd. (a).)  The statute authorizes special motions to strike in which the merits of a party's claims are evaluated, pre-discovery, in " 'a summary-judgment-like procedure.' " (*Barry v. State Bar of California* (2017) 2 Cal.5th 318, 324; see *id*. at pp. 321-322; but see Code Civ. Proc., § 425.16, subd. (g) [permitting trial courts to order specified discovery "for good cause shown"].)  If a claim arises out of an "act . . . in furtherance of a person's right of petition or free speech . . . in connection with a public issue," the claim must be stricken unless the non-moving party establishes "a probability that [it] will prevail on the merits."  (Code Civ. Proc., § 425.16, subd. (b)(1).)  To establish a probability of prevailing, a non-moving party must demonstrate that the claim is "legally sufficient and factually substantiated"—that is, the claim has " 'minimal merit' " and the factual showing supporting it, if accepted, "would be sufficient to sustain a favorable judgment."  (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 385, 391, 396.)

Guracar argues that the trial court erred in striking his cross-claims because he established a probability of prevailing on each.  We review the trial court's rulings on this issue de novo.  (See, e.g., *Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1067.)  However, before doing so, we consider an alternative ground for affirmance urged by cross-defendants: standing.

### A. Standing

Cross-Defendants argue that Guracar lacks standing because he presented no evidence that he suffered concrete harm.  We disagree.  The Legislature has authority to grant standing to sue in California courts absent concrete harm, and, as explained below,

6

we conclude that it exercised that authority to permit consumers such as Guracar to sue for statutory damages absent concrete harm under the statutes invoked here.

### 1. *Relevant Principles*

We begin by noting some important differences between state and federal law on standing.

Article III of the United States Constitution confines federal judicial power "to the resolution of 'Cases' and 'Controversies,' " and this case-or-controversy requirement requires the plaintiff to have "a ' "personal stake" ' in the case—in other words, standing." (*TransUnion LLC v. Ramirez* (2021) 594 U.S. 413, 424 (*TransUnion*).) To establish Article III standing, a party must have suffered "an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized [citations], and (b) 'actual or imminent, not "conjectural" or "hypothetical," ' [citations]." (*Lujan v. Defenders of Wildlife* (1992) 504 U.S. 555, 561; see also *TransUnion*, *supra*, at p. 423 [requiring "an injury in fact that is concrete, particularized, and actual or imminent"].) Moreover, as the United States Supreme Court recently made clear, Article III's concrete-harm requirement is not satisfied "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." (*Spokeo, Inc. v. Robins* (2016) 578 U.S. 330, 341 (*Spokeo*).)

California law is different. California courts are not subject to the restrictions that Article III imposes on federal judicial power, and, unlike the federal Constitution, the California Constitution has no case-or-controversy requirement. (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1117, fn. 13 (*Grosset*).) The California Legislature is therefore free to grant standing to sue in California courts absent concrete harm. (See, e.g., *Kim v. Reins Internat. California, Inc*. (2020) 9 Cal.5th 73, 83-91 (*Kim*); *White v. Davis* (1975) 13 Cal.3d 757, 764.) Consequently, standing under California statutes is "a matter of statutory interpretation" (*Adolph v. Uber Technologies, Inc*. (2023) 14 Cal.5th 1104,

7

1120), which varies "according to the intent of the Legislature" (*Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160, 175 (*Angelucci*)).

To ensure that relevant facts and issues are adequately presented, California statutes generally require that plaintiffs have suffered some injury. (*Angelucci*, *supra*, 41 Cal.4th at p. 175 ["In general terms, in order to have standing, the plaintiff must be able to allege injury—that is, some 'invasion of the plaintiffs' legally protected interests.' "]; see also *Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1248 ["a plaintiff is generally required to have a direct and substantial beneficial interest in order to seek a writ of mandate under section 1086"].) However, the Legislature may authorize consumers and others whose rights have been violated to recover statutory damages or penalties absent the concrete harm required in federal court by Article III; indeed, when the Legislature provides for statutory damages or penalties, it often permits individuals who have suffered no concrete harm to seek such relief. (See, e.g., *Naranjo v. Spectrum Security Services, Inc*. (2024) 15 Cal.5th 1056, 1070; *Kim*, *supra*, 9 Cal.5th at pp. 83-91; *Velocity Investments*, *supra*, 108 Cal.App.5th at pp. 1038-1041; *Brown v. Mortenson* (2019) 30 Cal.App.5th 931, 941-943; *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 386.)

Here, Guracar seeks statutory damages under three California statutes—the Debt Buyers Act, the PSLCRA, and the Rosenthal Act—and one federal statute, the FDCPA. We now consider whether Guracar has standing under those statutes.

### 2. *Debt Buyers Act*

We begin with the Debt Buyers Act, which a decision from this district, *Velocity Investments, supra*, 108 Cal.App.5th 1030, recently construed.

Guracar claims that cross-defendants violated the Debt Buyers Act by filing a time-barred lawsuit and by sending a collection letter that failed to provide notices required by the Act. As Guracar alleges that cross-defendants sued him despite knowing that the statute of limitations on his claims had expired, he allegedly was compelled to

defend against a meritless claim and therefore was subjected to the "panoply of psychological pressures most civil defendants suffer," a concrete harm recognized at common law. (See, e.g., *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50-51 [discussing wrongful institution of civil proceedings]; see also *TransUnion, supra*, 594 U.S. at p. 424-426 [examining the common law to identify concrete harms].) However, because he has not alleged any adverse consequences from cross-defendants' alleged failure to provide statutorily required notices, Guracar has not shown a traditionally recognized, concrete harm from that failure. (See, e.g., *Trichell v. Midland Credit Management, Inc.* (11th Cir. 2020) 964 F.3d 990, 1004 ["an asserted informational injury that causes no adverse effects cannot satisfy Article III"].) Consequently, if the Debt Buyers Act requires concrete harm, he lacks standing to seek statutory damages under the Act for failing to make statutorily required disclosures.

*Velocity Investments* considered whether the Debt Buyers Act requires claimants seeking statutory damages to suffer concrete harm and persuasively concluded that the Act does not. In *Velocity Investments*, the defendant purchased a consumer debt and sent the debtor a written communication about the debt without including a statutorily required notice of the right to request certain information. (*Velocity Investments, supra,* 108 Cal.App.5th at p. 1036; see also Civ. Code, § 1788.52, subd. (d)(1).)[1] The plaintiff sued, seeking statutory damages but "disclaimed any 'concrete injury.' " (*Velocity Investments, supra,* 108 Cal.App.4th at p. 1037.) Nonetheless, *Velocity Investments*

[1] The required notice states in pertinent part: " 'You may request records showing the following: (1) that [insert name of debt buyer] has the right to seek collection of the debt; (2) the debt balance, including an explanation of any interest charges and additional fees; (3) the date of default or the date of the last payment; (4) the name of the charge-off creditor and the account number associated with the debt ; (5) the name and last known address of the debtor as it appeared in the charge-off creditor's or debt-buyer's records prior to the sale of the debt, as appropriate; and (6) the names of all persons or entities that have purchased the debt. You may also request from us a copy of the contract or other documents evidencing your agreement to the debt.' " (Civ. Code, § 1788.52, subd. (d)(1).)

concluded that the plaintiff had standing to seek statutory damages under the Debt Buyers Act. (*Id*. at pp. 1038-1041.)

*Velocity Investments* began by noting that the Debt Buyers Act recognizes three types of damages: "actual damages," "statutory damages," and " 'additional damages.' " (*Velocity Investments*, *supra*, 108 Cal.App.5th at p. 1038.) Additionally, in individual actions, the Act imposes liability "equal to the sum" of "[a]ny actual damages sustained" and "[s]tatutory damages." (Civ. Code, § 1788.62, subd. (a)(1)-(2).) This provision makes statutory damages available without restriction but imposes actual damages only if there are "[a]ny" actual damages. Accordingly, *Velocity Investments* concluded that, under the Debt Buyers Act, statutory damages are always available, and actual damages, when present, "add to a debt buyer's liability under the Act." (*Velocity Investments*, *supra*, 108 Cal.App.5th at p. 1038.) The legislative history supports this conclusion: It states that Civil Code section 1788.52, which contains the Debt Buyers Act's damages provisions, " 'prescribe[s] *penalties* for . . . violation of the act' "—thereby confirming that the Legislature intended to make debt buyers liable for statutory damages whenever they violate the Act. (*Velocity Investments, supra,* 108 Cal.App.5th at p. 1041.)

Cross-Defendants do not dispute that the Debt Buyers Act treats statutory damages as an independent category of damages and agree that claimants need not prove actual damages in order to recover statutory damages. Instead, drawing a distinction between the concepts of injury and damages, cross-defendants assert that, absent actual damages, plaintiffs seeking statutory damages must show actual and concrete injury. However, cross-defendants fail to show how this conclusion follows from the text of the Act. They likewise fail to explain in what circumstances a claimant might suffer a cognizable injury without any actual damages, much less why the Legislature would have permitted statutory damages in those circumstances but not where there is no such injury. We therefore find Cross-Defendants' suggested interpretation implausible.

10

Cross-Defendants also assert there is a difference between damages and penalties. According to cross-defendants, statutory penalties are intended to punish wrongdoing and deter future compensation (and therefore penalties may confer standing absent any cognizable injury) but damages exist only to compensate injury (and therefore statutory damages are not available absent such injury). There is an obvious flaw in this logic: It assumes that statutory damages are purely compensatory. In fact, in many instances, such as with exemplary or punitive damages, "statutory damages serve to motivate compliance with the law and punish wrongdoers." (*Beeman v. Burling* (1990) 216 Cal.App.3d 1586, 1598; see also *Gonzalez v. Arrow Financial Services, LLC* (9th Cir. 2011) 660 F.3d 1055, 1067 ["Statutory damages under the FDCPA are intended to 'deter violations . . . even if [the] misconduct imposed no cost on the plaintiff.' "]; *Thomas v. Pierce, Hamilton, and Stern, Inc*. (N.D.Ga. 1997) 967 F.Supp. 507, 511 [under the FDCPA "the statutory damages award is punitive in nature"].)

Moreover, the Debt Buyers Act's statutory damages plainly have a punitive component. As noted above, the Act authorizes courts to award statutory damages in addition to any actual damages awarded. In addition, far from limiting statutory damages to situations in which actual damages fail to fully compensate a plaintiff's injuries, the Act requires that statutory damages "not be less than one hundred dollars." (Civ. Code, § 1788.62, subd. (a)(2); see also *In re Trans Union Corp. Privacy Litig*. (N.D.Ill. 2002) 211 F.R.D. 328, 341 ["It is because the statutory damages [under the Truth in Lending Act] are allowed in addition to compensatory (actual) damages that they are considered a penalty."].)

Cross-Defendants do not even attempt to explain how statutory damages are purely compensatory when both statutory and actual damages are awarded, or how a minimum award of $100 is compensatory when there are no actual damages. In addition, cross-defendants simply ignore the legislative history's observation that Civil Code

section 1788.52 "prescribe[s] *penalties* for each violation of the act." (Leg. Counsel's Dig., Sen. Bill No. 233 (2013-2014 Reg. Sess.), italics added.)

*Limon v. Circle K Stores* (2022) 84 Cal.App.5th 671 does not cast doubt on *Velocity Investments*. As the Goldsmith cross-defendants point out, *Limon* held that an informational injury causing no adverse effect did not confer standing. (*Limon*, at 84 Cal.App.5th at p. 707.) However, *Limon* did so in the context of claims under the Fair Credit Reporting Act (FCRA) (15 U.S.C. § 1681 et seq.). In sharp contrast to the Debt Buyers Act, FCRA states that, when the statute is violated, a court may award "any actual damages sustained by the consumer as result of the failure *or* damages of not less than $100 and not more than $1,000." (15 U.S.C. § 1681n(a)(1)(A), italics added.) Because this provision provides for either actual or statutory damages but not both, *Limon* concluded that under the FCRA statutory damages are "designed to provide redress where damages are 'difficult or impossible to quantify or prove.' " (*Limon*, *supra*, 84 Cal.App.4th at p. 703.) As *Velocity Investments* recognized, the Debt Buyers Act does just the opposite: It authorizes statutory damages whether or not actual damages are difficult to prove. (*Velocity Investments*, *supra*, 108 Cal.App.5th at p. 1037.) Moreover, far from denying that the Legislature may award statutory damages absent actual damages or concrete harm, *Limon* expressly recognizes that "the Legislature may authorize public interest lawsuits by a plaintiff even if that plaintiff has not been injured by the claimed violation." (*Limon, supra,* at pp. 693-694.)

We therefore conclude that cross-defendants' criticisms of *Velocity Investments* are unpersuasive and choose to follow the decision in concluding that the Debt Buyers Act does not require parties seeking statutory damages to suffer concrete harm. We also conclude that Guracar has standing to bring all his claims under the Debt Buyers Act.

### 3. *Private Student Loan Collections Reform Act*

Much like the Debt Buyers Act, the PSLCRA prohibits private educational loan collectors from suing to recover time-barred debts. (Civ. Code, § 1788.204.) Unlike the

12

Debt Buyers Act, the PSLCRA requires that such collectors possess certain information and documents before contacting a debtor (Civ. Code, § 1788.202, subd. (a)) and that any complaint filed against a debtor include certain allegations and attach certain documents (*id*., § 1788.205, subds. (a), (b)).  Guracar claims that cross-defendants violated these requirements.  However, Guracar did not present evidence that he suffered any adverse consequences from these alleged violations.  Consequently, Guracar has standing to assert his PSLCRA claims only if the statute does not require parties seeking statutory damages to suffer concrete harm.  Although there is no decision like *Velocity Investments* concerning standing under the PSLCRA, we conclude that the PSLCRA confers standing absent concrete harm for the same reason as the Debt Buyers Act.

The PSLCRA's damages provision is substantially identical to the Debt Buyers Act's provision.  The PSLCRA authorizes a person claiming violation of the PSLCRA to recover damages equaling the "sum of (1) [a]ny actual damages sustained by that person as result of the violation" and (2) "[s]tatutory damages."  (Civ. Code, § 1788.208, subd. (a)(1).)  Consequently, as in the Debt Buyers Act, statutory damages under the PSLCRA are a separate type of damages, which is always available in addition to any actual damages and may be awarded absent concrete harm.  We therefore interpret the PSLCRA, like the Debt Buyers Act, to permit statutory damages whether or not there was concrete harm.

There are some differences between the Debt Buyers Act and the PSLCRA.  The Debt Buyers Act authorizes statutory damages from $100 to $1,000 (Civ. Code, § 1788.62, subd. (a)(2)), while the PSLCRA authorizes statutory damages of "less than five hundred ($500) per violation" (Civ. Code, § 1788.208, subd. (a)(1)(B)).  In addition, the Debt Buyers Act authorizes "additional damages" of up to $500,000 on class actions (Civ. Code, § 1788.62, subd. (b)), while the PSLCRA permits "[d]amages pursuant to Section 1394" (Civ. Code, § 1788.208, subd. (a)(2)), which provides for punitive, or "exemplary," damages (*id*. § 3294, subd. (a)).  Focusing on this last provision, cross-

13

defendants note that Civil Code section 3294 authorizes the recovery of punitive damages "in addition to the actual damages" that a plaintiff may suffer. (*Id.* § 3294, subd. (a).) Cross-Defendants describe this statutory penalty as "an additur," which "cannot exist in the *absence* of an actual injury and actual damages," and they assert "[t]he same is true of the language" in the PSLCRA.

In fact, the language of the PSLCRA says just the opposite. Unlike Civil Code section 1394, the PSLCRA states that a person claiming a violation of the statute may recover "[d]amages in an amount equal to the sum of . . . [a]ny actual damages sustained by that person as a result of the violation" and "[s]tatutory damages in an amount as the court may allow, which shall not be less than five hundred dollars ($500) per violation." (Civ. Code, § 1788.208, subd. (a).) Thus, under the PSLCRA actual damages, if "[a]ny," are available in addition to statutory damages—not the other way around. In addition, cross-defendants once again fail to identify under what circumstances a claimant might suffer concrete harm but no actual damages or to explain why the Legislature would have intended to permit statutory damages in those circumstances but not where there is no such harm.

We therefore conclude that, like the Debt Buyers Act, the PSLCRA authorizes recovery of statutory damages whether or not a claimant has suffered concrete harm and that Guracar has standing to bring his PSLCRA claims.

### 4. *Rosenthal Act*

Guracar also claims that cross-defendants violated the Rosenthal Act, and in particular Civil Code section 1788.17, by attempting to collect a debt they knew was time-barred, making false and misleading representations, and misrepresenting the character, amount, and status of a debt. Civil Code section 1788.17 incorporates portions of the FDCPA: It states that debt collectors "shall comply with the provisions of Sections 1692b to 1692j, inclusive, . . . of Title 15 of the United States Code" and "shall be subject to the remedies in Section 1692k," all of which are part of the FDCPA (Civil Code,

14

§ 1788.17.)  We interpret this section to make statutory damages available for Rosenthal Act claims incorporating the FDCPA absent concrete harm.

Much like the Debt Buyers Act and the PSLRCA, the FDCPA provides for recovery of actual damages in addition to statutory damages.  In particular, the FDCPA authorizes consumers whose rights under the statute have been violated to recover "an amount equal to the sum of—(1) any actual damages sustained" and (2) "such additional damages as the court may allow, but not exceeding $1,000."  (15 U.S.C. § 1692k, subd. (a)-(a)(1)(A).)  Accordingly, before the Supreme Court's recent decisions in *Spokeo* and *TransUnion*, federal courts interpreted the FDCPA to make "statutory damages . . . available without proof of actual damages."  (*Baker v. G.C. Services Corp.* (9th Cir. 1982) 677 F.2d 775, 781; see *Keele v. Wexler* (7th Cir. 1998) 149 F.3d 589, 593-594.)  Civil Code section 1788.17 was enacted in 1999 after these decisions (but before *Spokeo* and *TransUnion*).  (Stats. 1999, ch. 319, § 32, p. 2469.)  We therefore infer that the Legislature understood the FDCPA to permit recovery of statutory damages absent concrete harm and, by instructing that violations of the FDCPA provisions incorporated into the Act "shall be subject to the remedies in Section 1692k," intended to make statutory damages available for such violations without proof of actual damages.

Accordingly, we conclude that Guracar has standing to bring his claims under the Rosenthal Act.

### 5.  *FDCPA*

Finally, we come to the claims that Guracar has asserted directly under the FDCPA.  Under the United States Supreme Court's recent decisions in *Spokeo* and *TransUnion*, even though Congress intended to permit consumers to seek statutory damages under the FDCPA absent actual damages, Guracar would not have standing to bring FDCPA claims in federal court unless he suffered a concrete harm under Article III.  (See, e.g., *Bassett v. Credit Bureau Services, Inc.* (2023) 60 F.4th 1132, 1136.)  However, as noted above, California courts are not bound by the restrictions that Article III imposes

15

on the federal judiciary. (*Grossett*, *supra*, 42 Cal.4th at p. 1117, fn. 13.) As the Rosenthal Act incorporates portions of the FDCPA (Civ. Code, § 1788.17) and states that its remedies are "cumulative" and "in addition to any . . . remedies under any other provision of law" (*id*., § 1788.32), we infer that the Legislature intended to honor Congress' intent and to allow consumers to bring claims directly under the FDCPA in California courts absent concrete harm. As both are present here, we need not resolve whether, in determining standing to bring federal statutory claims in California courts, Congressional intent or state legislative intent is the touchstone. (Compare *Limon*, *supra*, 84 Cal.App.5th at pp. 700-703 [analyzing whether Congress intended to authorize standing to pursue a FCRA claim without injury in fact] with *Muha v. Experian Information Solutions, Inc.* (2024) 106 Cal.App.5th 199, 208 [considering whether California legislature authorized FCRA claims].)

## B. Time-Barred Debt

Having determined that Guracar has standing to bring his cross-claims, we turn to whether he has established the probability of prevailing on those claims required by the anti-SLAPP statute, beginning with his cross-claims for suing to collect a time-barred debt.

It is clear that these cross-claims are legally sufficient. Both the Debt Buyers Act and the PSLCRA expressly prohibit debt buyers and private student loan collectors from suing to collect debts that are time-barred. (Civ. Code, § 1788.56 ["A debt buyer shall not bring suit . . . to collect a consumer debt if the applicable statute of limitations on the debt buyer's claim has expired."]; *id*. § 1788.204 ["A private education . . . loan collector shall not bring suit . . . to collect a private education loan if the applicable statute of limitations for the . . . private education loan collector's claim has expired."].) In addition, the FDCPA—and, by extension the Rosenthal Act, which incorporates provisions of the FDCPA (Civ. Code, § 1788.17)—has been interpreted to prohibit suing or threatening to sue to collect time-barred debts. (See, e.g., *McMahon v. LVNV*

16

*Funding, LLC* (7th Cir. 2014) 744 F.3d 1010, 1020; *McCollough v. Johnson, Rodenburg & Lauinger, LLC* (9th Cir. 2011) 637 F.3d 939, 947-948.)

However, the trial court held that Guracar did not factually substantiate his cross-claims, and therefore failed to establish a probability of prevailing on them, because Guracar's loan was not accelerated until June 2022 and therefore SLS's suit to collect on the payments owed after that date was timely filed. (See Code Civ. Proc, § 337.) Guracar argues that the trial court erred because, among other things, it failed to consider evidence that Bank of America accelerated Guracar's debt in a February 2010 letter, outside the limitations period. As explained below, we agree with Guracar.

Guracar's student loan required him to make monthly payments for 20 years. Under the continuous accrual doctrine, when a contractual obligation arises on a recurring basis, as with an installment contract or a lease, " 'a new cause of action accrues each time a wrongful act occurs, triggering a new limitations period.' " (*Aryeh v. Canon Business Solutions, Inc*. (2013) 55 Cal.4th 1185, 1199.) Consequently, under the ordinary operation of his loan, each time Guracar failed to make a monthly payment, a new claim for breach would arise, and a new limitations period on that new claim would begin to run. (*Piedmont Capital Management, LLC v. McElfish* (2023) 94 Cal.App.5th 961, 970; *Armstrong Petroleum Corp. v. Tri-Valley Oil & Gas Co*. (2004) 116 Cal.App.4th 1375, 1388.)

However, Guracar's credit agreement contained an acceleration clause. If Guracar failed to make a monthly payment, this clause gave the holder of the loan the option, after providing notice, to make the whole loan, any accrued interest, and all other amounts "due and payable at once": "[Y]ou"—which the promissory note defined to mean Bank of America or another holder of the loan—"have the right to give me [Guracar] notice that the whole outstanding principal balance, accrued interest, and all other amounts payable to you under the terms of this Credit Agreement are due and payable at once

17

(subject to any applicable law which may give me a right to cure) if . . . I fail to make any monthly payment to you when due . . . ."

If a party exercises the option granted by an acceleration clause to require immediate full payment, the statute of limitations on all amounts due under the loan begins to run upon failure to make that payment. (See *Garver v. Brace* (1996) 47 Cal.App.4th 995, 1000 (*Garver*); see 13 Williston on Contracts (4th ed. 2022) § 79:18, pp. 337-340, *id.* (2024 supp.) § 79:18, pp. 1-2.) However, an acceleration clause requires "some affirmative act" manifesting the election to exercise it. (*Garver*, *supra*, 47 Cal.App.4th at p. 1000; see also *Jones v. Wilton* (1938) 10 Cal.2d 493, 500 ["If the creditor fails to act affirmatively to mature the indebtedness, the statute of limitations is not set in motion."].)

Guracar presented evidence of such an affirmative act: Bank of America's February 2010 letter to Guracar. Guracar made the last payment on his loan in August 2009, and Bank of America charged off the loan as unrecoverable in January 2010. The following month, Bank of America sent Guracar a letter. The letter did not demand the "Monthly Payment Amount" or provide a due date for payment, as Guracar's credit agreement required monthly statements to do. Nor did the February 2010 letter demand payment of previously missed monthly payments. Instead, the February 2010 letter listed a balance of $8,288.53—the sum of the principal and interest due when Bank of America charged off the loan the month before—and informed Guracar that its purpose was to collect "the debt owed," not a monthly payment or even previously missed monthly payments. Finally, the February 2010 letter informed Guracar that his account was "seriously delinquent" and it was "imperative this account be paid *in full immediately*." (Italics added.)

A reasonable trier of fact easily could find that the February 2010 letter notified Guracar that Bank of America was exercising its option to accelerate repayment of Guracar's loan. As noted above, Guracar's credit agreement provided that, if he failed to

18

make any monthly payment, Bank of America had the option to accelerate repayment by providing notice that "the whole outstanding principal balance, accrued interest, and all other amounts payable . . . are due and payable at once."  The February 2010 letter is reasonably interpreted to do this:  As noted above, the letter stated that Guracar's account was "seriously delinquent"; it listed the loan balance as $8,288.53, all the outstanding principal balance, accrued interest and other amounts payable; and it informed Guracar that his account must be paid "in full immediately."  Consequently, the February 2010 letter is naturally understood as exercising Bank of America's option by providing notice that the "whole outstanding" balance of his loan was "due and payable at once," exactly as contemplated by the acceleration clause.  Indeed, it is hard to understand how else the letter may be understood, especially as cross-defendants have offered no alternative explanation.

In fact, SLS appears to have recognized that the February 2010 letter was a notice of acceleration in a November 2017 letter.  In addition to informing Guracar that SLS had purchased his loan, the November 2017 letter stated that "[t]he law limits how long you can be sued on a debt," and "[b]ecause of the age of your debt, we will not sue you for it, and we will not report it to any credit reporting agency."  This statement is, word-for-word, the one that the Debt Buyers Act requires debt buyers to give "[w]hen collecting on a time-barred debt" that is obsolescent.  (Civ. Code, § 1788.52, subd. (d)(3); see also *ibid.* [requiring statement that " '[t]he law limits how long you can be sued on a debt.  Because of the age of your debt, we will not sue you for it, and we will not report it to any credit reporting agency.' "].)

Courts have found loans accelerated based on less evidence.  For example, in *Sharpe v. Brotzman* (1956) 145 Cal.App.2d 354 (*Sharpe*), the plaintiffs purchased a sawmill financed in large part by a promissory note, which contained an acceleration clause.  (*Id.* at pp. 356, 360.)  After the plaintiff failed to make payments (*id.* at p. 357), the sellers sent the plaintiff a notice of foreclosure containing the following statement:

19

" 'I herewith demand of you all the unpaid balance plus taxes plus the percentages allowed me under the mortgage as foreclosure costs.' " (*Id.* at p. 359, italics omitted.) The Court of Appeal held that this statement was "clearly an exercise of the option . . . to declare all payments due upon a default, and was notice to the purchasers of the exercise of that opinion." (*Ibid*.)

The February 2010 letter provided even clearer notice of acceleration. Just as the notice of foreclosure in *Sharpe* demanded payment of "all the unpaid balance" plus additional items, the February 2010 letter identified the whole amount due under the loan ($8,282.53) and demanded payment "in full." Indeed, the letter went further, stating that Guracar was delinquent and demanding payment "immediately." Consequently, the February 2010 letter provided even clearer notice than in *Sharpe* that Bank of America was exercising its option to accelerate repayment.

A similar notice also was held sufficient to accelerate a loan in a case involving SLS and William & Fudge. In *Shadrin v. Student Loan Solutions LLC* (D. Md. 2022) 2022 WL 971183 (*Shadrin*), as here, SLS bought two student loans from Bank of America and later sued the debtors for nonpayment. (*Id.* at pp. *1-*2.) The debtors in turn sued SLS and Williams & Fudge for violating the FDCPA and related state statutes by seeking to collect a time-barred debt. (*Id.* at pp. *1, *3.) When SLS and Williams & Fudge moved to dismiss, the district court denied the motion. Applying California law, the court held that the loans at issue were accelerated before SLS purchased them in 2017. (*Id.* at pp. *5-*6.) In 2016, Bank of America sent one of the debtors a letter identifying the total amount of his loan and stating that this amount had been placed for collection. (*Id.* at p. *6.) Bank of America also sent the other debtor a letter stating that her account balance was $17,683.79, which was much more than any monthly payment or the previously missed payments, and that this balance was due. (*Ibid*.) Neither letter included any installment schedule or information about making regular installment payments. (*Ibid*.) The district court concluded that the letters constituted "an affirmative

act necessary to accelerate an unsecured loan" because they "contained demands for the entire balance of the borrower's loan, coupled with the lack of information about or subsequent notices of installment payments." (*Id*. at p. *7.)

The February 2010 letter similarly demanded payment of the entire balance of Guracar's loan and specified that the balance of the debt was due without requesting any monthly payment or providing information about subsequent installment payments. Indeed, the February 2010 letter demanded payment of the balance "in full" and "immediately." Here again, Bank of America provided even clearer notice of acceleration than notices previously found to accelerate repayment.

Despite their involvement in the *Shadrin* case, SLS and Williams & Fudge do not mention the decision in their briefing. Instead, they contend that in *Beal Bank v. Crystal Properties, Ltd.* (*In re Crystal Properties, Ltd.*) (9th Cir. 2001) 268 F.3d 743 (*Beal Bank*), the Ninth Circuit held that a letter demanding repayment in full was not a notice of acceleration. While that is technically correct, SLS and Williams & Fudge fail to mention what else the letter in *Beal Bank* said. In *Beal Bank*, a letter from the Federal Deposit Insurance Corporation (FDIC) informed a debtor that " 'there is a 5% default interest due on all remaining principal and unpaid interest,' " and " '[u]nless we receive payment in full of all principal and accrued interest by May 31, 1995 . . . we will be filing a Notice of Default.' " (*Id.* at p. 752.) However, the FDIC's letter calculated the interest owed by debtor "at the contract[] interest rate" rather than the default interest rate. (*Ibid*.) The letter also stated that " 'we *will* be filing a Notice of Default' " and therefore threatened future action, which, the Ninth Circuit observed, "demonstrates that the acceleration option had *not* been exercised." (*Ibid*., italics added.) Accordingly, the Ninth Circuit concluded that the letter "merely advised the debtors that the FDIC could invoke the default interest clause in the future." (*Ibid*.)

By contrast, nothing in this case suggests that Bank of America was merely threatening to accelerate Guracar's loan at some point in the future. Bank of America's

February 2010 letter did not calculate interest using the contractual rather than the default interest rate. Nor did it threaten future action. Instead, the letter unequivocally demanded payment in full immediately. In short, unlike the letter in *Beal Bank*, nothing in the February 2010 letter suggests that it was not intended to exercise the bank's option to accelerate repayment.

Cross-Defendants cite several other cases, but these cases are also distinguishable. *First Bank Investors' Trust v. Tarkio College* (8th Cir. 1997) 129 F.3d 471 (*Tarkio*) is inapposite for the same reason as *Beal Bank*. The letter in *Tarkio* stated that the debtor was in default and requested " 'full payment of the unpaid principal . . . and unpaid and accrued interest.' " (*Tarkio*, *supra*, 129 F.3d at p. 474.) However, the letter also calculated the interest due at the contractual rather than the default interest rate, thereby indicating that the bank was not yet exercising its right to accelerate the loan. (*Id*. at pp. 475-476.) In another case cited by cross-defendants, a bank warned a debtor that it " 'ha[d] the option of accelerating and declaring immediately due and payable all of the liabilities owing the Bank,' " but did not indicate that in fact it was exercising that option. (*In re Zamani* (Bankr. N.D. Cal. 2008) 390 B.R. 680, 689.) In still other cases, there was not even a warning that the note in question would be accelerated, much less exercise of an acceleration clause. (See *Green v. Carlstrom* (1963) 212 Cal.App.2d 240, 243-245; *Bird v. Real Time Resolutions, Inc*. (N.D.Cal. 2016) 183 F.Supp.3d 1058, 1063.) Consequently, none of the cases cited by cross-defendants suggests that the February 2010 letter was not a notice of acceleration.

Accordingly, a reasonable trier of fact could find that the February 2010 letter exercised Bank of America's option to accelerate repayment of Guracar's loan. In light of such a finding, any claim concerning the loan would have accrued when shortly thereafter Guracar failed to repay the entire loan. (*Garver*, *supra*, 47 Cal.App.4th at p. 1000.) This in turn means that the four-year statute of limitations on any collection claim would have begun to run in 2010 and therefore expired long before SLS sued

22

12 years later in 2022.  We therefore conclude that Guracar established a probability of defeating cross-defendant's statute of limitations defense and, more generally, of prevailing on his cross-claims that cross-defendants violated the Debt Buyers Act, the PSLCRA, the Rosenthal Act, and the FDCPA by suing to collect a time-barred debt.

## C.  The Misrepresentation Claims

Guracar claims that cross-defendants violated the FDCPA and, by way of FDCPA provisions incorporated into it, the Rosenthal Act by making false or misleading representations in trying to collect Guracar's debt.  These cross-claims are supported by the same evidence that supports Guracar's cross-claims that cross-defendants sued to collect a time-barred debt:  The complaint alleged that the claim against Guracar was timely because the applicable statute of limitations is four years, Guracar's loan was an installment contract, and the loan was accelerated in October 2018.  However, as shown above, Guracar presented evidence that his loan was accelerated before it was sold to SLS in 2017 and that SLS recognized the acceleration later that year.  As this was more than four years before the complaint was filed in September 2022, a reasonable trier of fact could find that the statements in the complaint concerning the statute of limitations were either false or deceptive and mischaracterized the legal status of the claims against Guracar.

We therefore conclude that Guracar has established a reasonable probability of prevailing on his cross-claims that cross-defendants violated the FDCPA and the Rosenthal Act by making false and misleading representations.

## D.  Initial Written Communication

In addition to claiming cross-defendants violated multiple statutes by suing to collect a time-barred debt, Guracar alleged that SLS violated the Debt Buyers Act by failing to make required disclosures in its initial written communication.  The trial court held that Guracar failed to show a probability of prevailing on this cross-claim because

SLS presented uncontroverted evidence that, in fact, its initial communication contained the required disclosures.  We agree with the trial court.

The Debt Buyers Act requires the initial written communication from a debt buyer to disclose that the debtor may request various records relating to the debt in question.  (Civ. Code, § 1788.52, subd. (d)(1).)  In addition, if the debt is time-barred, the debt buyer must state that it will not sue for that debt.  (*Id*., § 1788.52, subd. (d)(1)- (2).)  If the time-barred debt is "not past the date for obsolescence provided for in Section 605(a) of the federal Fair Credit Reporting Act" (*id*., § 1788.52, subd. (d)(2)), which is seven years (15 U.S.C. § 1681c(a)(4)), the initial communication must state: " 'The law limits how long you can be sued on a debt.  Because of the age of your debt, we will not sue you for it.  If you do not pay the debt, [insert name of debt buyer] may [continue to] report it to the credit reporting agencies as unpaid for as long as the law permits this reporting.' "  (Civ. Code, § 1788.52, subd. (d)(2).)  If the time-barred debt is past the obsolescence date, the initial communication must state: " 'The law limits how long you can be sued on a debt.  Because of the age of your debt, we will not sue you for it, and we will not report it to any credit reporting agency.' "  (*Id*., § 1788.52, subd. (d)(3).)

In the trial court, Guracar argued that SLS failed to make the disclosures required by the Debt Buyers Act because they were not included in the June 2022 letter sent by Williams & Fudge on SLS's behalf.  In its reply, SLS presented evidence that in fact its first communication with Guracar was nearly five years earlier.  That communication, a letter dated November 21, 2017, contained the statutorily required disclosure of the debtor's right to request various records.  In addition, as previously noted, the letter stated that "[t]he law limits how long you can be sued on a debt. Because of the age of your debt, we will not sue you for it, and we will not report it to any credit reporting agency."  Accordingly, the trial court concluded that SLS made the required initial disclosures and Guracar cannot prevail on his cross-claim that SLS failed to do so.

24

In this court, Guracar does not argue that the November 2017 letter failed to make the required disclosures. Nor does he dispute that the November 2017 is authentic or that he received it. Instead, pointing to his declaration averring that the first communication he received from cross-defendants was in June 2022, Guracar asserts that the trial court erred in weighing the competing evidence and concluding that the November 2017 was SLS's first communication to him. We are not persuaded. A party opposing an anti-SLAPP motion cannot show a probability of prevailing in the face of contrary evidence presented by the moving party without controverting that evidence. (See, e.g., *La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 478 & fn. 7.) As Guracar has not done so, he cannot raise a triable issue concerning whether SLS made the initial disclosures required by the Debt Buyers Act.

We therefore agree with the trial court that Guracar failed to establish a probability of prevailing on his cross-claim that cross-defendants violated the Debt Buyers Act.

### E. Pleadings

Guracar's final cross-claims concern SLS's alleged failure to include in its complaint allegations and documents required by the PSLCRA. The trial court ruled that Guracar failed to show a probability of prevailing on these cross-claims. With one exception, we agree.

When a private student loan collector contacts a debtor to collect a debt, the PSLCRA requires the collector to possess certain information, such as the identity of the owner of the loan, the date the loan was incurred, the date payment was first missed, and any payments made by guarantors, sureties or other third parties. (Civ. Code, § 1788.202, subds. (a)(1)-(11).) The PSLCRA also requires private student loan collectors to possess copies of certain documents, including documentation of the creditor's ownership and any self-certification form or other needs analysis that the original creditor conducted before making the loan. (*Id.,* § 1788.202, subd. (a)(12)-(14).) In addition, if a private student loan collector sues to collect a loan, it must allege that it

25

had the information, and attach the documents, it was required to possess. (*Id*. § 1788.205, subds. (a)(1), (b).) Finally, the complaint must allege that the applicable statute of limitations has not expired and that the collector complied with its obligation to possess information and documents. (*Id*., § 1788.205, subds. (a)(2), (3).)

Guracar claimed that the complaint failed to include the following information required by the PSLCRA: (1) the date on which Guracar's loan was incurred, (2) the date on which Guracar first missed a payment, and (3) any payments made by guarantors, sureties, or other third parties. In fact, the complaint contained this information. It included an affidavit attaching the promissory note, which stated that Guracar's loan was executed on December 4, 2007. The complaint also attached a payment record showing that Guracar's first partial payment was on February 15, 2009 and alleged that the last payment was on August 17, 2009. Finally, while there was no allegation in the complaint that any payments were made by a guarantor, surety, or other third party, cross-defendants presented uncontroverted evidence that no such payments were received.

Guracar also alleged that the complaint failed to attach documentation of SLS's ownership of his loan or copies of the self-certification form and needs analysis conducted by the original creditor. In fact, the complaint provided documentation that SLS is the owner of Guracar's loan by attaching an affidavit from SLS's general manager explaining that SLS purchased the loan on October 31, 2017 as well as a copy of the bill of sale for a group of loans, including Guracar's. The complaint did not attach a self-certification form or needs analysis. However, the law requiring this self-certification was not enacted until August 2008 (see Pub. L. 110-343, Div. A., tit. I, § 130(a), 122 Stat. 3078 § 1021 [codified at 15 U.S.C. § 1638(e)(3)]), after Guracar's loan was made in 2007. In addition, Guracar presented no evidence of any needs analysis.

Finally, Guracar claimed that the complaint failed to allege that the applicable statute of limitations had not expired or that SLS complied with the requirement that it possessed the information required by the PSLCRA when it contacted Guracar. In fact,

the complaint adequately alleged that the statute of limitations had not run:  It alleged that the applicable statute of limitations is four years, that Guracar's loan is an installment contract, and that Guracar's loan was accelerated in June 2022.

However, as cross-defendants acknowledge, there was no allegation in the complaint that SLS complied with its obligations under section 1788.202 of the PSLCRA to possess information and documents before contacting Guracar.  (See Civ. Code, § 1788.205, subd. (a)(1) & (3) ["The complaint shall allege . . . that the plaintiff has complied with Section 1788.202."].)  In addition, because there was no allegation and thus no compliance at all with this requirement, defendants did not substantially comply with it.  (See, e.g., *City of San José v. Superior Court* (1974) 12 Cal.3 447, 456 [" ' "Substantial compliance cannot be predicated upon no compliance." ' "].)

Admittedly, this alleged breach is highly technical.  However, the PSLCRA does not automatically impose statutory damages whenever its provisions are violated.  To the contrary, the PSLCRA authorizes statutory damages in an amount "as the court *may* allow" (Civ. Code, § 1788.208, subd. (a)(1)(B), italics added), and it affords an absolute defense for unintentional violations caused by "bona fide error."  (*Id*. § 1788.208, subd. (d).)

Accordingly, we conclude that the trial court correctly struck all of Guracar's cross-claims under the PSLCRA except his cross-claim that SLS's complaint failed to allege compliance with Civil Code section 1788.202.

### III.  DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court, which is directed to reinstate (1) all of appellant's cross-claims to the extent that they are based on suing to collect a time-barred debt, (2) appellant's cross-claims under the Rosenthal Act and the FDCPA for making false or misleading representations and for misrepresenting the character or legal status of appellant's debt, and (3) appellant's cross-claim under the PSLRCA for failing to allege compliance with Civil Code section 1788.202.  The order

striking appellant's cross-claims is otherwise affirmed.  Appellant is entitled to recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (3).)

_____

BROMBERG, J.

WE CONCUR:

_____

LIE, ACTING P. J.

_____

WILSON, J.

*Guracar v. Student Loan Solutions, LLC, et al.*
H051407

Trial Court:                                        Santa Clara County Superior Court
                                                    Superior Court No.: 22CV405008


Trial Judge:                                        The Honorable Theodore C Zayner




Attorneys for Cross-Complainant and                 Consumer Law Center
Appellant:  Osman Ynus Guracar
                                                    Fred W. Schwinn
                                                    Raeon R. Roulston
                                                    Matthew C. Salmonsen




Attorneys for Cross-Defendants and                  Hinshaw & Culbertson, LLP
Respondents:  Student Loan Solutions, LLC,
et al.                                              Justin M. Penn
                                                    Brian S. Whittemore


                                                    Womble Bond Dickinson

                                                    Tomio B. Narita
                                                    Jeffrey A. Topor

*Guracar v. Student Loan Solutions, LLC, et al.*
H051407